Richard LABRIE

v.

**PACE MEMBERSHIP WAREHOUSE, INC. et al.**

**No. 94–458–Appeal.**

Supreme Court of Rhode Island.

July 11, 1996.

868

Richard S. Sahagian, for Plaintiff.

Peter Mathieu; Dennis S. Baluch, Melody A. Alger, James S. D'Ambra; Mark P. Dolan; Elizabeth F. Sullivan, Michael G. Sarli, Stuart D. Hallagan, III, Providence, William F. Ahern, Jr.; William J. Hunt, for Defendant.

## OPINION

FLANDERS, Justice.

This appeal calls upon us to determine whether "the firefighter's rule" should extinguish negligence claims arising out of a routine, scheduled inspection of a merchant's sprinkler system. Because in this case no fire has been fought, no firefighter has been injured, and no exigency brought the injured fire-department employee to the scene, we answer this question in the negative.

### Facts

The plaintiff, Richard Labrie, was employed as a superintendent in the Fire Alarm Division of the Warwick Fire Department when he was injured during a routine inspection of a merchant's newly installed fire-alarm and sprinkler system. Although his job was to inspect and certify fire alarms, sprinkler systems, and other fire-prevention devices, plaintiff's combat duties as a firefighter had ceased over fifteen years earlier.

On July 20, 1990, while plaintiff was inspecting this new equipment, a water-line valve ruptured, sousing plaintiff with a high-pressure power spray that injured him. The plaintiff sued the merchant-owner of the commercial premises where this accident occurred as well as various other defendants responsible for the design, manufacture, or installation of the allegedly defective sprinkler system. The defendants, Pace Membership Warehouse, Aetna Pump, Hill & Scott, Inc., Reliant Systems, Inc., and John P. Caito Corporation, moved for summary judgment, arguing that the firefighter's rule and plaintiff's assumption of the risk barred plaintiff's lawsuit. The court below agreed and dismissed plaintiff's claims.

For the reasons set forth below, we conclude that the Superior Court responded to a false alarm when it used the firefighter's rule to torch plaintiff's complaint.

## Analysis

### I. Firefighter's Rule

The firefighter's rule and its police officer's analogue (the rule), when applicable, bar an injured public-safety official from maintaining a negligence action against a tortfeasor whose alleged malfeasance is responsible for bringing the officer to the scene of a fire, crime, or other emergency where the officer is injured.

In Rhode Island the rule has had a limited application to those situations (such as fighting fires or crimes in progress) in which a crisis or an emergency causes the hurried intervention of public-safety officers. *See Smith v. Tully,* 665 A.2d 1333, 1334 (R.I. 1995) (police officer fatally shot bar patron in self-defense after receiving call for assistance because patron was brandishing a knife); *Mignone v. Fieldcrest Mills,* 556 A.2d 35, 36 (R.I.1989) (firefighter injured by fall on water-soaked stairs while fighting fire); *Cook v. Demetrakas,* 108 R.I. 397, 398–99, 275 A.2d 919, 920–21 (1971) (police officer entered a defendant's premises for purpose of apprehending larceny fugitive); *Beehler v. Daniels, Cornell & Co.,* 19 R.I. 49, 49–50, 31 A. 582, 582–83 (1895) (firefighter fell into unguarded elevator shaft while fighting fire).

In regard to property owners, the traditional scope of this rule is narrow because it is an *exception* to the generally applicable duty of such owners to use reasonable care for the safety of all persons reasonably expected to come onto the premises. We have favored a limited construction of the rule in this type of situation because "[w]hen this court applies the * * * rule, we extinguish

an individual's right to pursue an otherwise valid cause of action. In light of this onerous result, a great many courts have limited the scope of the rule to precise fact situations." *Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 440 (R.I.1993).

Thus, we have never applied the rule to bar recovery in a case like this one that is devoid of the usual exigencies that are present when a public-safety officer hies to the scene of a crime, a fire, or some other crisis. Here, plaintiff's presence was not only expected by the property-owner defendant but scheduled in advance; indeed, the inspection was a planned visit where there was ample time for defendants to use reasonable care in making, designing, installing, or readying the equipment and the premises for plaintiff/inspector's review. Despite abandoning our former reliance on the old common-law land-entrant classifications to fix the duty of care owed to such persons, we have stressed that the circumstances surrounding an entrant's presence on the premises are still relevant to the analysis of whether defendant expected an entrant to be on the premises and, thus, whether defendant/property owner had the time to exercise reasonable care for the entrant's safety in light of that expectation. *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 307, 333 A.2d 127, 133 (1975).[1]

█ We believe that when properly applied, the rule bars suit by a public-safety officer only in circumstances in which he or she is injured while confronting a crisis created by a defendant's ordinary negligence and only when he or she is injured by a risk typically associated with responding to that crisis. *Aetna*, 619 A.2d at 439. The rationale for this narrow exception to the general rule imposing liability on tortfeasors is that, although firefighters are trained and paid to handle emergency situations, they do not thereby forfeit all rights that they may otherwise have to recover for on-the-job injuries that they sustain owing to the negligence of others. Although owners and occupants of property would be unduly burdened if they

were required to keep their premises safe for firefighters entering the premises even at unforeseeable times and in circumstances when owner/occupants have no control over the firefighters' actions while on the premises, *Sherman v. Suburban Trust Co.*, 282 Md. 238, 243, 384 A.2d 76, 79 (1978), such concerns are not present in nonemergency situations like this one.

We recognize that many jurisdictions have so broadened the rule that it now operates as a virtual workers' compensation type of bar for all those officers employed by fire or police departments who are injured on the job; that is, it precludes recovery on any third-party tort claims whenever a defendant's negligence causes an employee of the fire or the police department to be injured in the course of his or her work. *See, e.g., Horn v. Urban Investment and Development Co.*, 166 Ill.App.3d 62, 116 Ill.Dec. 597, 519 N.E.2d 489 (1988) (plaintiff firefighter, injured by fall on wet storeroom floor while investigating source of false alarm, may not seek redress); *Rosa v. Dunkin' Donuts of Passaic*, 122 N.J. 66, 583 A.2d 1129 (1991) (recovery barred when officer slipped and fell on powdered sugar in rendering assistance to unconscious employee); *Zanghi v. Niagara Frontier Transportation Commission*, 85 N.Y.2d 423, 649 N.E.2d 1167, 626 N.Y.S.2d 23 (1995) (no recovery for police officer who slipped and fell on snow-covered metal plate at bus station); *Hoehn v. Consolidated Edison Co. of New York*, 205 A.D.2d 734, 613 N.Y.S.2d 700 (1994) (police officer's common-law negligence claim for injuries suffered while moving steel plate back into position barred by firefighter's rule). Rhode Island, however, extends neither the benefits nor the burdens of its Workers' Compensation Act (WCA) to police officers and firefighters. *See* G.L.1956 § 28–29–2.

Other jurisdictions, in an attempt to mitigate the rule's harsh results, have created numerous exceptions to its applicability. *See, e.g., Donohue v. San Francisco Housing*

---

1. In *Tantimonico v. Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1061–62 (R.I.1994), this court held that the only duty landowners owe trespassers is to refrain from causing trespassers willful or wanton injury. Thus, we overruled

*Mariorenzi* as it applied to trespassers. *Id.* However, this court declined to depart from that part of the holding of *Mariorenzi* dedicated to invitees and licensees. *Id.* at 1062.

*Authority*, 16 Cal.App.4th 658, 20 Cal. Rptr.2d 148 (1993) (firefighter may seek damages for slip on wet stairs during routine fire inspection); *Lenthall v. Maxwell*, 138 Cal.App.3d 716, 188 Cal.Rptr. 260 (1982) (officer may not recover for intentional torts related to original emergency but may recover for unrelated negligence); *Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983) (police officer may recover for intentional torts and for negligent acts unrelated to event that brought officer to scene). Finally, difficulties encountered in distinguishing among these numerous exceptions have led some jurisdictions to abolish the rule altogether.[2]

By construing the rule narrowly as an exception to the general duty to exercise reasonable care, we seek to avoid either abolishing the rule entirely or else creating numerous exceptions to it. As Justice Tobriner of the California Supreme Court so eloquently concluded, "Courts should be hesitant to cut holes in the carefully woven fabric of the requirement of due care, and to deny certain selected classifications that protection." *Walters v. Sloan*, 20 Cal.3d 199, 217, 571 P.2d 609, 620, 142 Cal.Rptr. 152, 163 (1977) (Tobriner, Acting C.J., dissenting).

Our narrow view of the proper scope of the rule accords with the approach taken by the Wisconsin Supreme Court in *Wright v. Coleman*, 148 Wis.2d 897, 436 N.W.2d 864 (1989). In *Wright* the plaintiff firefighter was injured when he slipped and fell on "glare ice" on the driveway leading up to a garage fire. *Id.* at 900, 436 N.W.2d at 865. The court remanded the case for a jury to determine whether the defendant property owner had exercised due care in keeping the premises reasonably safe. *Id.* at 909, 436 N.W.2d at 869. The court concluded that a firefighter is owed the duty of reasonable care owed to all who enter the property by invitation, except in those "narrow exceptions to liability" involving

negligence "in starting a fire and failing to curtail its spread." *Id.* at 899–900, 904, 436 N.W.2d at 865, 867 (quoting *Hass v. Chicago & North Western Ry. Co.*, 48 Wis.2d 321, 179 N.W.2d 885 (1970)). Thus "only in the unusual or very clear case" should the rule be invoked successfully to bar recovery by an injured firefighter against negligent tortfeasors. *Id.* at 908, 436 N.W.2d at 868–69.

Likewise, in *Mounsey v. Ellard*, 363 Mass. 693, 700, 297 N.E.2d 43, 47 (1973), the Supreme Judicial Court of Massachusetts held that a police officer injured on the defendant's premises while serving a summons was owed a duty of reasonable care to keep the route of access to the property in reasonably safe condition. In abandoning the classifications of licensee and invitee, the court emphasized that

> "the foreseeability of the visitor's presence and the time, manner, place and surrounding circumstances of his [or her] entry remain relevant factors which will determine 'in part the likelihood of injury to him [or her], and the extent of the interest which must be sacrificed to avoid the risk of injury.'" *Id.* at 708–09, 297 N.E.2d at 52 (quoting *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 106 (D.C.Cir.1972)).

> "[I]f the plaintiff policeman, in the course of chasing a thief, was injured at 2 A.M. when he fell into an unguarded hole in the defendants' private cellar, the defendants might well be entitled to a directed verdict because the time and place of the policeman's entrance was not an event which the defendants should have foreseen in the exercise of reasonable care. On the other hand, if the defendants directed the policeman to search the cellar or knew he was going there, it could be found that the defendants were under an obligation to warn

---

**2.** The Oregon Supreme Court and two decisions of the Colorado Court of Appeals have abrogated the firefighter's rule. *See Wills v. Bath Excavating & Construction Co.*, 829 P.2d 405 (Colo.Ct. App.1991); *Banyai v. Arruda*, 799 P.2d 441 (Colo.Ct.App.1990); *Christensen v. Murphy*, 296 Or. 610, 678 P.2d 1210 (1984). Minnesota and Florida have legislatively abolished the rule. *See* Minn.Stat. § 604.06 (1994); Fla.Stat.Ann. § 112.182 (West Supp.1996). California Civil

Code Ann. § 1714.9 (West 1985) abrogates the firefighter's rule to the extent that "the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel * * *." Pennsylvania has declined to adopt the rule. *Mull v. Kerstetter*, 373 Pa.Super. Ct. 228, 231–32, 540 A.2d 951, 952–53, *appeal denied*, 520 Pa. 606, 553 A.2d 968 (1988).

the policeman of the dangers known to the defendants." *Id.* at 709, 297 N.E.2d at 53.

The underlying rationale for the rule stems in part from the sudden and unexpected nature of the emergency service typically provided by firefighters in the course of fighting an existing fire. Because of their unforeseeable entrance onto the property and the inability of the owner or others to control their actions while they are on the premises fighting the fire, neither firefighters nor the public they serve can reasonably expect property owners to exercise reasonable care for the safety of a professional rescuer in such a situation. *See Sam v. Wesley,* 647 N.E.2d 382, 384 (Ind.Ct.App.1995); *Weyant v. City of New York,* 162 Misc.2d 132, 140, 616 N.Y.S.2d 428, 433–34 (1994) (firefighter's rule did not preclude recovery when firefighter was injured in a collision while fire truck was on a routine relocation call rather than en route to an emergency).

For if, as Justice Cardozo once said, "Danger invites rescue,"[3] then prevention may be even higher on society's approved guest list. But rescue is summoned to the scene when danger's party is in full swing; prevention, on the other hand, receives the legal equivalent of a printed invitation in the mail. In the latter situation, we do not think it too onerous for property owners and others to be responsible for their tortious acts.

■ Here, plaintiff inspector was not engaged in a professional rescue. He had not been summoned to the scene of any emergency. Nor was this a case when one of the high-pressure water lines in the sprinkler system had already burst and plaintiff was injured while responding to such a crisis. Rather, he was on the premises at defendant Pace's invitation merely to certify its newly installed fire-alarm and sprinkler system. For all plaintiff knew and expected, the system was in good working order with no known defects. The plaintiff therefore had every reason to expect that reasonable care had been taken to prepare the system for his inspection, albeit he knew there was a re-

mote risk of injury due to the high-pressure water lines used in the system.

Thus, defendants here have not satisfied the third prong of the test that we set forth in *Aetna, supra,* for the rule to apply. Although plaintiff was injured in the course of his employment as an inspector for the city of Warwick's Fire Department, defendants did not create a " dangerous situation which brought the police officer or firefighter to the *crime scene, accident scene, or fire," Aetna,* 619 A.2d at 439, because when this fire-department inspector came to Pace's warehouse, there was no existing crime scene, accident scene, fire, or other emergency that brought him there. (Emphasis added.)

■ On the contrary, plaintiff arrived at the warehouse in a shirt and tie after having been informed that defendants' sprinkler system was ready to be inspected and certified. He testified that he had no expectation of danger from an exploding high-pressure water line because he had been told that the system had been pretested. Thus, the function plaintiff was performing at the time of injury was akin to that of a building inspector. Public employees, such as building inspectors, health inspectors, meter readers, and telephone-repair people, are owed the duty of reasonable care while on the premises in their professional capacity. *See Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 106 (D.C.Cir.1972); *Sam,* 647 N.E.2d at 385; *Barry v. Stop & Shop, Inc.,* 335 Mass. 767, 767, 140 N.E.2d 198, 199 (1957); *Cowan v. One Hour Valet, Inc.,* 151 W.Va. 941, 952, 157 S.E.2d 843, 849 (1967); *see generally* Annotation, 28 A.L.R.3d 1344, 1346 (1969).

In reaching this conclusion, we are not unmindful that an ounce of preventative firefighting by one fire-department inspector may often be worth a pound of after-the-fact heroics by a whole squad of firefighters dispatched to douse a raging conflagration. Allowing those like plaintiff who engage in such preventative firefighting to recover for any negligence that injures them while performing their duties is consistent with the General Assembly's public-policy determinations in excluding police officers and firefighters from

**3.** *Wagner v. International Ry. Co.,* 232 N.Y. 176, 180, 133 N.E. 437, 437 (1921).

coverage under the WCA and in allowing municipalities to be indemnified by liable third parties for any "injured on duty" benefits paid to injured police and firefighters. *See* G.L.1956 § 45–19–1.1 (entitling governmental entities to indemnity from persons liable to pay damages to injured public-safety officers); *see also Manzotti v. Amica Mutual Insurance Co.*, 656 A.2d 625, 626 (R.I.1995) (in suit by public-safety officer against liable third party, once liability has been determined, a municipality should be allowed to become a party to effectuate the allocation of damages; this is not to say a municipality is an indispensable party or ought to delay the proceeding against a third-party tortfeasor).[4] Absent the emergency conditions of a fire or some similar exigency, the rule should not be applicable to bar negligence actions against tortfeasors. Without a fire to fight, or at least some other circumstances of similar exigency, the firefighter's rule should not allow tortfeasors to escape unsinged from the flames of tort liability.

## II. *Secondary Assumption of the Risk*

 Next, defendants' contend that even if the firefighter's rule is inapplicable, summary judgment is nonetheless appropriate because, by accepting employment as an inspector of fire-alarm and sprinkler systems, plaintiff assumed the risk of injury from defects in such systems. In posing such an argument at the summary-judgment stage, defendants refer to secondary assumption of the risk as opposed to primary assumption of the risk. Secondary assumption of the risk, like primary assumption of the risk, may be invoked as a defense by a tortfeasor to escape or to diminish liability. *See Drew v. Wall*, 495 A.2d 229, 231 (R.I. 1985); *Rickey v. Boden*, 421 A.2d 539, 543 (R.I.1980). Generally, whether a plaintiff assumed a risk of harm and thereby absolved a

defendant from creating an unreasonable risk of injury is an issue for a trier of fact to resolve. *Drew*, 495 A.2d at 231. Only if the record suggests but one inference, however, is this issue one to be decided by the trial justice on a summary-judgment motion. *Id.* Here, the record is not so clear as to justify removing the issue from the jury's consideration.

 To establish this defense, a defendant must prove that a plaintiff "knew of the existence of a danger, appreciated its unreasonable character, and then voluntarily exposed himself to it." *Id.* The standard is a subjective one requiring us to review the evidence to determine what this particular plaintiff actually saw, knew, understood, and appreciated at the time of his injury. *Id.* at 231–32; *see also Filosa v. Courtois Sand and Gravel Co.*, 590 A.2d 100, 103 (R.I.1991).

Here, plaintiff alleges that the various defendants manufactured, assembled, and/or installed the subject sprinkler system in a negligent manner. Further, he contends that defendants' failure to pretest the system exposed him to an unreasonable risk of harm from defects that were otherwise detectable. The issue to be resolved, therefore, is whether during his inspection of the sprinkler system plaintiff perceived and appreciated the risk of an exploding water-line valve that could be due to defendants' negligence. Because we believe a rational trier of fact could find that plaintiff did not fully appreciate the risk of injury from this cause, the trial justice erred in granting summary judgments for defendants.

For example, there is no suggestion that the failed sprinkler system had any visible defects that would have caused plaintiff to take special precautions to guard against the risk of a potential rupture during the inspec-

4. In 1917 the Legislature specifically excluded members of the fire and police departments of any town or city from the Workers' Compensation Act. *See* P.L.1917, ch. 1534, § 5. In 1944 firefighters and police officers became statutorily entitled to "injured on duty" (IOD) benefits for incapacity resulting from injuries received and illnesses contracted in the performance of their duties. *See* P.L.1944, ch. 1479, § 2. Today, after a series of amendments this section is known as G.L.1956 § 45–19–1. Section 45–19–

1.1 sets forth a provision for reimbursement in favor of the state or any political subdivision that pays IOD benefits to an injured firefighter. This section "states that when a firefighter has legal rights against a [tortfeasor] other than his or her employer, he or she is free to pursue them but must then reimburse the city, town, or the State of Rhode Island to the extent it has paid compensation under § 45–19–1." *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 40 (R.I.1989).

tion process. Moreover, defendants had informed plaintiff that their sprinkler system was ready for certification. In depositions, both plaintiff and his superior, Chief James Smith, stated that they believed a standard pretest of the sprinkler system had been conducted. Both men further testified that had they known of defendants' failure to perform such a test, the inspection would not have taken place.

In these circumstances plaintiff had no prior warning of the system's instability, and neither his general familiarity with sprinkler systems nor his experience as a fire-alarm inspector would have caused him to realize that this system posed any imminent danger to him. Thus, unlike typical situations involving the doctrine of assumption of the risk, there is no inferable evidence that plaintiff here voluntarily encountered an obvious risk of injury when he undertook this inspection. *Cf. Filosa*, 590 A.2d at 103–04 (decedent and owner of dilapidated building, who was repeatedly warned not to go into the building because of the danger of a wall collapsing, assumed the risk of injury by working behind it); *Drew*, 495 A.2d at 232 (decedent who was aware of danger posed by running internal-combustion engine in enclosed space assumed the risk of asphyxiation by restarting engine after becoming dizzy and after reentering pit); *Rickey*, 421 A.2d at 544 (woman assumed risk of injury when in response to several options, she chose to ascend narrow stairway with no handrail). Rather, any risk involved here appeared to plaintiff to be remote and extremely unlikely to occur.

In moving for summary judgment, the defendants failed to provide any evidence supporting their contention that the plaintiff could have discovered the system's defects, realized the danger, and avoided the risk of injury posed by a ruptured water-line valve. Therefore, we believe there is a genuine issue of material fact regarding to what extent, if at all, the plaintiff assumed the risk of the injuries he suffered. Consequently a trial on the merits is warranted, and the trial justice erred in granting the defendants' motions for summary judgment.

## Conclusion

For these reasons the plaintiff's appeal is sustained, the summary judgments are vacated, and the papers in the case are remanded to the Superior Court for trial.