Timothy DAY

v.

Monroe L. CASLOWITZ et al.

No. 96–371–Appeal.

Supreme Court of Rhode Island.

May 29, 1998.

Harry J. Hoopis, Warwick, for Plaintiff.

Robert P. Landau, Dennis E. Carley, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This appeal requires us to determine the scope of the public-safety officer's rule (the rule).[1] In this case the plaintiff police officer slipped, fell, and injured himself upon the defendant homeowner's snow- and ice-covered walkway while he was investigating an activated home-security alarm on the premises. In these circumstances does the rule bar the injured police officer's negligence claim against the homeowner? Yes, we conclude, for the reasons discussed below.

The plaintiff police officer, Timothy Day, appeals from a Superior Court order granting summary judgment for defendant property owner, Monroe L. Caslowitz. The hearing justice's ruling in favor of defendant was based upon the applicability of the rule to the factual situation described in plaintiff's complaint. On appeal plaintiff argues that the rule was misapplied in this case. He claims that the rule only bars suits by public-safety officers against property owners for their alleged acts of ordinary negligence that both create an emergency situation requiring the officer's presence at the place of injury and cause the officer's injury. Because the reason for the officer's coming to the scene in this case (the triggering of a home-security alarm) was different from the alleged cause of the officer's injury (the property owner's putative negligence in failing to clear the walkway of snow and ice), plaintiff claims that the rule should not bar his action.

The defendant, on the other hand, contends that the rule precludes suits against property owners and occupiers for their alleged acts of ordinary negligence that cause injury to public-safety officers while they are responding to work-related emergency situations. Even though defendant's alleged negligence in failing to clear the walkway of snow and ice was not the cause of the officer's presence at the scene, the rule, defendant claims, is still applicable in this situation to bar plaintiff's suit. Because we believe that the rule's underlying policies and goals are best served by precluding an officer's action for personal injuries sustained in these circumstances, we affirm the summary judgment in favor of defendant property owner.

## Facts

The material facts are undisputed. At approximately 10:00 a.m. on February 25, 1994, the Providence police department (PPD) received a signal at the station house indicating that a home-security alarm had been activated at defendant's residence on the east side of Providence. The PPD dispatched plaintiff and another officer to the scene to investigate the alarm. While approaching defendant's home to determine what triggered the alarm, plaintiff slipped and fell on defendant's snow- and ice-covered walkway, sustaining personal injuries as a result. The defendant was not home at the time of the incident.

## Analysis

The public-safety officer's rule is an outgrowth of the common-law firefighter's rule that precluded suit against a party whose alleged negligence caused or contributed to the fire that injured or killed the firefighter. *See Peerless Insurance Co. v. Nault,* 701 A.2d 320, 323 (R.I.1997); *Labrie v. Pace Membership Warehouse, Inc.,* 678 A.2d 867, 868 (R.I.1996); *Smith,* 665 A.2d at 1335; *Aetna Casualty & Surety Co. v. Vierra,* 619 A.2d 436, 437 (R.I.1993); *Mignone v. Fieldcrest Mills,* 556 A.2d 35, 37 (R.I.1989). Because the rationale supporting the firefighter's rule was also applicable to police officers, this Court has applied the rule in law enforcement contexts to bar suits by police officers. *See, e.g., Nault,* 701 A.2d at 323; *Vierra,* 619 A.2d at 439.

1. Depending on the factual situation presented, the rule has also been referred to as "the firefighter's rule" and in law enforcement contexts as "the police officer's rule." If applicable, the rule bars an injured public-safety officer from maintaining a negligence action against a person allegedly responsible for bringing the officer to the scene of a crime, fire, or some other job-related incident of similar exigency where the officer is then injured because of this same person's alleged negligence.

Two rationales support the existence of the rule. The first is the doctrine of "primary" assumption of the risk. Public-safety officers are deemed "as a matter of law, [to] assume all normal risks inherent in their duties when they accept their positions * * *." *Mignone*, 556 A.2d at 39. Although they are not required to assume every possible risk that they may encounter during their work day, public-safety officers are deemed to undertake those risks which are known or can reasonably be anticipated to arise in the usual course of responding to the dangerous situations they typically encounter in performing their jobs. *See Vierra*, 619 A.2d at 438; *Mignone*, 556 A.2d at 39.[2]

The second rationale for the rule rests on a policy consideration that has been called one of the "fundamental concepts of justice." *Vierra*, 619 A.2d at 438 (quoting *Mignone*, 556 A.2d at 39). Because the public employs, trains, and compensates public-safety officers to confront a wide variety of physically dangerous crises, this policy holds that it would be unfair to allow such officers to recover for the very negligent acts that create the governmental need for their employment in the first place. *Vierra*, 619 A.2d at 438. Otherwise public-safety officers would be able to obtain what would effectively amount to double compensation from the very citizens they are paid to protect: initial compensation derived from taxpaying property owners in the form of a fair salary plus available injured-on-duty benefits for braving dangerous situations as part of their normal job responsibilities and then additional injured-on-duty tort damages from the responsible property owners after they sustain such injuries. *Id.* (citing *Berko v. Freda*, 93 N.J. 81, 459 A.2d 663, 666 (1983)); *see also Mignone*, 556 A.2d at 39.

However, like the primary assumption-of-risk doctrine, we have also limited the scope of this policy justification for the rule. Thus, we usually apply the rule to bar a public-safety officer's lawsuit only when he or she is attempting to recover for the alleged negligence of a person who needed the officer's emergency services in the first place. But we have been loath to extend the rule to situations in which the officer attempts to recover from an independent or subsequent tortfeasor, *see Vierra*, 619 A.2d at 438–39, or for intentional wrongdoing. *See Kaya v. Partington*, 681 A.2d 256, 260 (R.I.1996) (noting that the plaintiff police officer would not be precluded by the injured-on-duty statute from bringing suit against an intentional tortfeasor); *Labrie*, 678 A.2d at 869 ("[t]he rule bars suit by a public-safety officer only in circumstances in which he or she is injured by a defendant's *ordinary negligence*" (emphasis added)).

Relying upon the two rationales cited above, this Court has crafted a three-pronged test for application of the rule. The defendant must demonstrate that (1) the officer was injured in the course of performing tasks relating to his or her employment, (2) the risk of injury was one that the officer could reasonably anticipate would arise in the dangerous situations that the officer's employment typically required him or her to encounter, and (3) the alleged tortfeasor was the individual responsible for bringing the officer to the scene of a potential crime, fire, or other emergency where the injury then occurs. *See Nault*, 701 A.2d at 323; *Labrie*, 678 A.2d at 871; *Smith*, 665 A.2d at 1335; *Vierra*, 619 A.2d at 439.

The plaintiff argues that because the snow- and ice-covered walkway (the condition that caused his injuries) did not create the occasion for his presence at the scene, the third part of the above-described test has not been satisfied and thus the rule should not preclude his claim. But the rule has not been limited to barring claims based upon the very same alleged negligence (if any) that occasioned the officer's presence at the scene. *Accord Rosa v. Dunkin' Donuts of*

---

2. This "primary" assumption-of-risk doctrine is distinguishable from "secondary" assumption of the risk. "Secondary" assumption of the risk is an affirmative defense which a defendant may employ to defeat liability even if a defendant's negligence has already been established. *See Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 438 (R.I.1993); *Drew v. Wall*, 495 A.2d 229, 231 (R.I.1985). To prevail on this defense, a defendant must prove that a plaintiff "knew of the existence of a danger, appreciated its unreasonable character, and then voluntarily exposed himself to it." *Drew*, 495 A.2d at 231; *see also Hennessey v. Pyne*, 694 A.2d 691, 699 (R.I.1997).

*Passaic,* 122 N.J. 66, 583 A.2d 1129, 1130–31 (1991) (police officer who slipped and fell on powdery substance on floor of donut shop while carrying out unconscious employee in response to an emergency-medical-assistance call was barred by the rule from suing the property owner). We are of the opinion that the rule's above-described policy underpinnings should also bar plaintiff's claim in this situation. In our view plaintiff's injuries resulted from a risk inherent in responding to the exigent stimulus created by the activated alarm; the risk of such a fall on snow and ice was a foreseeable consequence of the officer's doing his duty in these circumstances; and defendant, the alleged tortfeasor, was the person who was at least partially responsible for the situation (installation of a home-security alarm that would alert the police after it was triggered) that brought the officer to the scene. Recovery is thus precluded by the rule.[3] *See Rosa,* 583 A.2d at 1133 ("[t]o hold otherwise creates artificial distinctions between the negligence that occasioned one's presence and the negligence defining the scene at which one arrives (and with which one has been commissioned and empowered to deal)").

In our recent *Labrie* opinion we emphasized that the circumstances surrounding an officer's presence on the premises were relevant to a determination of whether a property owner or occupier had an opportunity to exercise reasonable care for the officer's safety. *See Labrie,* 678 A.2d at 869. In that case we recognized that a sudden and unforeseeable need for emergency public-safety services, coupled with the inability of property owners and occupiers to control the actions of the responding officers after they enter upon the premises were factors that militated in favor of the rule's application in such situations. *Id.* at 871. As a result, we observed, an officer responding to such an emergency cannot reasonably expect that the landowner/occupier will have exercised reasonable care to prepare the premises for the officer's safety. *Id.* We noted that

"[I]f the plaintiff policeman, in the course of chasing a thief, was injured at 2 A.M. when he fell into an unguarded hole in the defendant's private cellar, the defendants might well be entitled to a directed verdict because the time and place of the policeman's entrance was not an event which the defendants should have foreseen in the exercise of reasonable care. On the other hand, if the defendants directed the policeman to search the cellar or knew he was going there, it could be found that the defendants were under an obligation to warn the policeman of the dangers known to the defendants." *Id.* at 870–71 (quoting *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 53 (1973)).

In our judgment, to require property owners and occupiers to prepare for such unexpected arrivals as occurred in this case would frustrate the common-sense and sound public-policy considerations that gave rise to the rule. Citizens in need of emergency help from law enforcement authorities should not have to ensure that their premises are purged from all potential sources of negligence before police officers can be expected to perform their duty in such situations. Thus the primary assumption-of-risk rationale discussed in *Mignone* requires that police officers assume the risk of encountering ordinary negligence in the course of performing their duties when such a risk can reasonably be anticipated to arise in confronting the usual exigencies of their employment. *Mignone,* 556 A.2d at 39; *see also Vierra,* 619 A.2d at 438.

Traversing accumulations of snow and ice on walkways and driveways is one of the risks inherent in a public-safety officer's normal performance of his or her job in this state during the winter months. Thus, confronting a snow- and ice-covered walkway at a potential crime scene is so closely connected to the purpose of plaintiff's law enforcement presence on the property that it may be accurately described as incidental to and inherent in the performance of his normal duties. Except for hidden defects and non-

---

**3.** The record does not disclose whether this was a false alarm or whether the alarm was in fact triggered by an intruder. But in this case, for the purpose of deciding whether to apply the rule, it does not matter. Whatever the true cause for the alarm's activation, it was the officer's job to investigate this potential crime scene.

obvious hazards, public-safety officers should be held to take the premises as they find them and assume all the usual risks inherent in performing their duties while they are investigating potential emergencies.[4]

Furthermore, the fundamental-concepts-of-justice rationale argues in favor of a similar conclusion. Public safety officers are paid, trained, and expected to confront the risks inherent in responding to potential emergencies like this one. *Mignone*, 556 A.2d at 39. They are not at liberty to decide whether to investigate a potential house-break or burglary on the basis of adverse weather conditions. Hence plaintiff's employment responsibilities compelled him to assume the risk of trekking through or over the snow and ice at defendant's home to investigate why the alarm had sounded.

Finally, application of the rule in this case does not unduly expand its boundaries across unchartered waters or into forbidden territories. Here no independent tortfeasor committed an act of negligence after the police officer arrived at the scene. *Cf. Vierra*, 619 A.2d at 439 (allowing a police officer to recover against a motorist whose vehicle struck the officer while he was directing traffic at an accident scene). Similarly this is not a situation in which a landowner or occupier expressly invited the public-safety officer onto the property to conduct a nonemergency inspection. *See Labrie*, 678 A.2d at 870. Nor is this a case like the one cited in *Labrie* in which a property-owning defendant failed to warn the public-safety officer of a hidden peril on the premises known to that defendant. *See id.* at 870–71 (quoting *Mounsey*, 297 N.E.2d at 53, "it could be found that the defendants were under an obligation to warn the policeman of the dangers known to the defendants").

4. In *Labrie v. Pace Membership Warehouse, Inc.*, 678 A.2d 867, 870 (R.I.1996), we stated that our narrow view of the rule's scope was in accord with the approach taken by the Wisconsin Supreme Court in *Wright v. Coleman*, 148 Wis.2d 897, 436 N.W.2d 864 (1989). There the Wisconsin court held that the rule would not bar a firefighter's claim based upon his slip and fall on glare ice while he was toting a fire hose up a driveway leading to a garage fire. On further

## Conclusion

For the foregoing reasons we hold that the public-safety officer's rule applies to bar the claims in this case. When the plaintiff was investigating the activation of the defendant's home-security alarm, he assumed the risk of injuring himself on the snow- and ice-covered walkway at the defendant's home—a risk that was inherent in the officer's duty to investigate potential crime scenes after a security alarm has sounded. Thus we deny the plaintiff's appeal, affirm the Superior Court's judgment, and remand the papers in this case to the Superior Court.

reflection we are of the opinion that the rule should not be applied, as the Wisconsin court indicated, only in situations involving the homeowner's negligence in starting a fire and in failing to curtail its spread. Rather we believe that the rule should also bar claims such as those in the case at bar where the time, place, and conditions of the public-safety officer's arrival on the property cannot be reasonably anticipated by the homeowner.