**David HIGGINS**

v.

**RHODE ISLAND HOSPITAL et al.**

**No. 2010–260–Appeal.**

Supreme Court of Rhode Island.

Jan. 18, 2012.

---

Sonja L. DeYoe, Esq., East Providence, for David Higgins.

Mark R. Fleury, Esq., for Rhode Island Hospital.

Lauren D. Wilkins, Esq., for U.S. Securities Associates, Inc.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Does the "firefighter's rule" bar recovery to a firefighter who was injured in the course of assisting a nurse to subdue an unruly patient? Under the facts presented in this dispute, we hold that it does.

This case came before the Supreme Court for oral argument at North Providence High School on November 29, 2011, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts & Travel

On the night of August 12, 2006, plaintiff David Higgins brought a patient to Rhode Island Hospital during the course of his duties as an EMT/firefighter for the City of Providence. After he had safely delivered his patient, but while he was still at the hospital, a nurse asked Higgins to assist her with a disorderly patient who had been shouting and spitting at her and at others in the triage hallway. Although the patient was seated on a gurney and restrained with soft restraints at the wrists, he had free movement of his torso. Higgins and two security guards[1] struggled to hold down the patient so that the nurse could administer medication to calm him.

Unfortunately, the medication was not effective in settling the patient, so the nurse asked Higgins to help her place a "spit mask"[2] on him. A mask was placed on the patient, but it did not stop him from spitting. As a result, and at the nurse's request, Higgins attempted to put another mask on the patient. In an attempt to avoid the second mask, the patient violently moved his head and torso about, and in that process he violently struck Higgins on the jaw with the back of his head, knocking an unconscious Higgins to the floor.

As a result of this incident, Higgins was seriously and permanently injured to the extent that he could no longer perform his duties as an EMT/firefighter. Higgins received injured-on-duty benefits[3] as well as

---

1. The security guards were employed by U.S. Security Associates, a company that provides security to Rhode Island Hospital by contract.

2. Apparently, a spit mask covers the face of an unruly person so that he is not able to spit on others.

3. General Laws 1956 § 45–19–1 provides in pertinent part:
    "(a) Whenever any police officer of the Rhode Island Airport Corporation or whenever any police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties or due to their rendering of emergency assistance within the physical boundaries of the state of Rhode Island at any occurrence involving the protection or rescue of human life which necessitates that they respond in a professional capacity when they would normally be considered by their employer to be officially off-duty, the respective city, town, fire district, state of Rhode Island or Rhode Island Airport Cor-

certain other disability benefits in connection with his employment. He later retired on a pension for accidental disability from the City of Providence.

Eventually, Higgins brought suit against both Rhode Island Hospital and U.S. Securities Associates, Inc., alleging that they were negligent when they failed to restrain the patient and that that failure had caused his injuries. Higgins also alleged that Rhode Island Hospital failed to exercise due care because it failed to provide properly trained security personnel to ensure a safe environment. The defendants moved for summary judgment, arguing that Higgins' claim was barred by the firefighter's rule. A justice of the Superior Court agreed, and summary judgment was granted. Higgins timely appealed to this Court.

## Standard of Review

■ "This Court reviews *de novo* a trial justice's decision granting summary

poration by which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, is employed, shall, during the period of the incapacity, pay the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, the salary or wage and benefits to which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses, and hospital services, medicines, crutches, and apparatus for the necessary period, except that if any city, town, fire district, the state of Rhode Island or Rhode Island Airport Corporation provides the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, with insurance coverage for the related treatment, services, or equipment, then the city, town, fire district, the state of Rhode Island or Rhode Island Airport Corporation is only obligated to pay the difference between the maximum

judgment." *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009) (citing *Cullen v. Lincoln Town Council*, 960 A.2d 246, 248 (R.I.2008)). "This Court will affirm summary judgment if, when viewing the evidence in the light most favorable to the nonmoving party, 'there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Trust of McManus v. McManus*, 18 A.3d 550, 552 (R.I.2011) (quoting *Lynch*, 965 A.2d at 424). "The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of facts in dispute." *Id.* However, the precise issue before this Court is one of law, and questions of law are reviewed on a *de novo* basis. *Heflin v. Koszela*, 774 A.2d 25, 31 (R.I.2001).

## Analysis

■ The firefighter's rule, also known as the public-safety officer's rule,[4] "bar[s]

amount allowable under the insurance coverage and the actual cost of the treatment, service, or equipment. In addition, the cities, towns, fire districts, the state of Rhode Island or Rhode Island Airport Corporation shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement, subject to the provisions of subsection (j) herein.
" * * *

"(g) In order to receive the benefits provided for under this section, a police officer or firefighter must prove to their employer that he or she had reasonable grounds to believe that there was an emergency which required an immediate need for their assistance for the protection or rescue of human life."

4. In *Rinn v. Razee*, 912 A.2d 939, 939 n. 1 (R.I.2006) (mem.), we noted that the firefighter's rule is also known as the police officer's rule and the public-safety officer's rule. We extended the firefighter's rule to police officers in *Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 439 (R.I.1993).

an injured public-safety official from maintaining a negligence action against a tortfeasor whose alleged malfeasance is responsible for bringing the officer to the scene of a fire, crime, or other emergency where the officer is injured." *Labrie v. Pace Membership Warehouse, Inc.*, 678 A.2d 867, 868 (R.I.1996).

To be shielded from liability under the firefighter's rule, an alleged tortfeasor must establish:

"(1) that the tortfeasor injured the police officer or firefighter in the course of his or her employment, (2) that the risk the tortfeasor created was the type of risk that one could reasonably anticipate would arise in the dangerous situation which their employment requires them to encounter, and (3) that the tortfeasor is the individual who created the dangerous situation which brought the police officer or firefighter to the crime scene, accident scene, or fire." *Rinn v. Razee*, 912 A.2d 939, 940 (R.I.2006) (mem.) (quoting *Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 439 (R.I.1993)).

Before this Court, Higgins argues that the firefighter's rule should bar claims only in those limited situations when an emergency requires the firefighter to go to the scene, and that for the rule to apply, injury must arise out of the same circumstances that originally brought the firefighter to the scene. He points out that the emergency that caused him to go to the hospital in the first place had been resolved and that his efforts to assist the nurse in subduing the unruly patient were not a requirement of his job. However, this argument necessarily presumes that the incident involving the nurse and the disorderly patient did not qualify as an emergency, and further that the "scene" was identical to that of the emergency which originally brought Higgins to the hospital. We disagree with both presumptions.

Although the firefighter's rule is limited to emergencies that cause the hurried intervention of a firefighter, the rule "was never intended to impose a literal requirement for the alleged tortfeasor to have called the [firefighter] to the scene in order for the rule to apply." *Krajewski v. Bourque*, 782 A.2d 650, 652 (R.I.2001) (quoting *Martellucci v. FDIC*, 748 A.2d 829, 832 (R.I.2000)). What is required is that there be "some nexus or connection" between the alleged tortfeasor and the emergency that brought the firefighter to the place where he or she was injured. *Rinn*, 912 A.2d at 940 (quoting *Krajewski*, 782 A.2d at 652).

### The Rule as Applied to this Case

There is no dispute that the first part of the firefighter's rule is satisfied here because there is no question that Higgins was injured during the course of his employment duties as an EMT/firefighter for the City of Providence. Indeed, Higgins received injured-on-duty pay under G.L.1956 § 45–19–1. The requirements of the second part are also met because Higgins reasonably anticipated the risks that were posed by an encounter with an unruly patient; that was a risk he had encountered on several occasions in the past.[5]

The fulcrum of this case is the third part of the firefighter's rule: were defendants the allegedly negligent tortfeasors who caused the firefighter to go to the place where he was injured? We believe that they were, and we are not persuaded by

---

5. In his answers to interrogatories, Higgins said that on at least two occasions he had been injured by an aggressive or intoxicated patient, and that on two other occasions he was injured while lifting a patient.

Higgins' argument that he was injured in an intervening incident that occurred at the original emergency scene.

This case is distinguishable from other cases in which a separate intervening incident occurred at the original emergency scene, causing injury to the firefighter or public-safety official. In *Vierra*, 619 A.2d at 436, a police officer was directed to report to the scene of a motor vehicle accident to direct traffic. While she was engaged in that activity, the police officer was struck and injured by another vehicle that had not been involved in the first accident. *Id.* at 436–37. Under those facts, we held that the firefighter's rule did not bar the police officer's claim because the driver of the car that struck the officer was not the negligent tortfeasor who brought the officer to the place where she was injured, and that there was an independent, intervening cause of the officer's injury. *Id.* at 439.

Higgins cites to *Labrie* for the proposition that this Court limits the application of the firefighter's rule to situations involving an emergency; he argues that he was not responding to an emergency. In *Labrie*, 678 A.2d at 868, the plaintiff was the superintendent of the Fire Alarm Division of the Warwick Fire Department, and it was his responsibility to inspect and certify fire alarms and sprinkler systems. Labrie was injured during a *scheduled* visit to the defendant's premises to inspect and certify a newly installed fire-alarm and sprinkler system. *Id.* at 871. While he was performing those duties, a water-line valve ruptured, dousing him with a high-pressure power spray and severely injuring him. *Id.* at 868.

We held that the firefighter's rule did not bar the plaintiff's negligence claim against the defendant because the plaintiff was not engaged in a rescue and had not been called to an emergency scene. *La-brie*, 678 A.2d at 871. Furthermore, we observed that this was not a case in which the plaintiff was called to the premises to specifically inspect a burst water-line, and therefore, would be reasonably expected to anticipate such injury. *Id.*

*Labrie* is easily distinguishable from this case because Higgins was responding to a citizen who was in distress and who was at risk of being injured by an unruly patient. Thus, he was reacting to an emergency as opposed to a routine, previously scheduled call.

This case is factually unique, but it does bear striking similarities to the case of *Walker v. Prignano*, 850 A.2d 954 (R.I. 2004). In *Walker*, a plaintiff police officer was dispatched to the defendant's home after a home security alarm was triggered. *Id.* at 955. After the plaintiff had finished checking the defendant's premises, and as he was returning to his cruiser, he heard the sounds of a collision in the street. *Id.* The plaintiff began to hurry to the accident scene, descending a stone stairway that led from the defendant's home to the sidewalk. *Id.* As he did, he fell forward and fractured his left ankle because of, he alleged, uneven steps. *Id.* He then brought an action for negligence against the homeowner. *Id.*

In affirming the judgment of the Superior Court, we held that the public-safety officer's rule barred his claim against the homeowner because the "plaintiff's injury was the result of a risk incidental to the emergency created when [the] defendant's security alarm sounded and a foreseeable consequence of his duty on the property." *Walker*, 850 A.2d at 956. We further said, "[t]hat the reason for [the] plaintiff's injury is arguably somewhat attenuated from his initial purpose does not negate the fact that he was injured on [the] defendant's property after responding to an emergency there." *Id.*

Similar reasoning applies here. Just as in *Walker,* in which the reason for the plaintiff's injury was attenuated from his initial purpose for being on the defendant's property, Higgins' injury was detached from the original emergency that caused Higgins to be at the hospital. *See Walker,* 850 A.2d at 956. When Higgins completed his original task of transporting the first patient to the hospital, he left the emergency scene involving the first patient and moved to a new emergency scene after a nurse at the hospital requested Higgins' assistance with a difficult patient. At that point, the first emergency ended and a new emergency, allegedly created by the negligent restraint of the patient, began.

■ Public policy considerations also weigh heavily in favor of barring Higgins' claim for recovery against defendants. There are two preeminent theories that serve as foundations for the firefighter's rule. The first is primary assumption of the risk; firefighters and public-safety officers "are deemed 'as a matter of law, [to] assume all normal risks inherent in their duties when they accept their positions * * *.'" *Day v. Caslowitz,* 713 A.2d 758, 760 (R.I.1998) (quoting *Mignone v. Fieldcrest Mills,* 556 A.2d 35, 39 (R.I.1989)). The second is a policy consideration that is considered to be one of the "fundamental concepts of justice." *Vierra,* 619 A.2d at 438 (quoting *Mignone,* 556 A.2d at 39). According to this concept, police officers and firefighters are compensated by the public to confront emergency situations; thus, it is inappropriate for these officials to recover for negligent acts that may result in emergencies that create the very need for their employment in the first place. *See Vierra,* 619 A.2d at 438.

The plaintiff already has received injured-on-duty benefits, other disability benefits, and he currently is receiving a pension for accidental disability from the City of Providence. All his medical expenses have been paid. To allow Higgins to recover in this situation poses the risk of permitting multiple recoveries, which would be in stark violation of the fundamental concept of justice rationale underpinning the firefighter's rule.

After a thorough review of the record in this case, we are led to the firm conclusion that the firefighter's rule bars Higgins' claim against the defendants. Higgins unquestionably was injured during the course of his employment as an on-duty EMT/firefighter. Further, he reasonably could have anticipated that he would be injured in this manner, because he conceded that he had been injured in the past by patients during the course of his employment. Finally, a Rhode Island Hospital employee's negligence, and/or negligence on the part of the U.S. Security Associates guards, in improperly restraining an aggressive patient, caused Higgins to be summoned to the scene in the hallway of the hospital where he was injured.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

