******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, J., with whom McDONALD, J., joins, dissenting. I respectfully disagree with part II of the majority's opinion, which concludes that the claims of the plaintiff, Justin Lund, a Connecticut state trooper, are not barred by the firefighter's rule in accordance with *Sepega* v. *DeLaura*, 326 Conn.    ,    A.3d    (2017), also decided today, which limits that doctrine to premises liability cases.[1] As I stated in my concurring opinion in *Sepega,* I believe that, under *Kaminski* v. *Fairfield*, 216 Conn. 29, 578 A.2d 1048 (1990), and *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 717 A.2d 215 (1998), along with the vast majority of sister state decisions, the firefighter's rule is not so limited, notwithstanding some unfortunate obiter dicta in *Levandoski* v. *Cone*, 267 Conn. 651, 841 A.2d 208 (2004). See *Sepega* v. *DeLaura*, supra,    . Applying the firefighter's rule to the present case, I conclude that it bars the ordinary negligence claims made by the plaintiff, who was injured in the line of duty while attempting to subdue an emotionally disturbed person who had been committed to the custody of the defendant, Milford Hospital, Inc. I would affirm the judgment of the trial court, rendered after sustaining the defendant's objection to a substitute complaint, which the plaintiff filed after the court had granted the defendant's motion to strike the original complaint. Accordingly, I respectfully dissent.

My analysis of the firefighter's rule is framed by a review of the operative facts, as pleaded in the substitute complaint.[2] The substitute complaint alleges that Dale Pariseau was transported by ambulance to the defendant's emergency room for psychiatric observation following his violent and irrational behavior— including attacks that injured two other Connecticut state troopers—at the scene of an automobile accident on Interstate 95. The plaintiff, who had been attending to an earlier accident nearby, went to the defendant's emergency room to check on the two police officers who had been injured by Pariseau; the defendant's staff did not "at any time" ask for the assistance of any other police officers, including the plaintiff, with regard to Pariseau. In the process of checking on the injured officers, the defendant's staff showed the plaintiff that Pariseau was being restrained under observation while undergoing a full psychiatric evaluation. The plaintiff relied on their representations that Pariseau had been properly secured and restrained.

After gathering up Pariseau's effects and leaving the emergency room, the plaintiff looked into Pariseau's room and noticed that he was no longer there. The plaintiff asked where Pariseau had gone, and a nurse indicated that he had gone unaccompanied and unrestrained into a bathroom behind the nurse's station to

change into a hospital gown. The plaintiff then knocked on the locked bathroom door, heard water running in the sink, and asked Pariseau to unlock the door. Pariseau asked for more time in the bathroom, with the water still running. After ten minutes, Pariseau flung open the door and ran out, hurling a garbage can that was filled with a mix of hot water and his own urine at the plaintiff, another police officer, and two nurses. The plaintiff pursued Pariseau, but slipped in the mix of urine and water on the floor. The plaintiff then caught up to Pariseau, and sustained injuries to his head, shoulder, elbow, wrist, and hand in the ensuing struggle.

The plaintiff then brought the civil action underlying the present appeal, alleging that the defendant was negligent in numerous ways, including (1) failing to supervise or restrain Pariseau properly, (2) failing to provide for adequate security in the area where foreseeably dangerous patients are held, (3) allowing Pariseau, who was known to be dangerous, to go to the bathroom unrestrained and unaccompanied, and (4) failing to train its staff properly.

In my concurring opinion in *Sepega*, I disagreed with the majority's decision to limit the firefighter's rule to premises liability cases and concluded that, like the vast majority of our sister states, Connecticut should retain "the common-law firefighter's rule as a matter of public policy, notwithstanding underlying doctrinal changes such as the statutory abolition of assumption of risk or differing landowners' duties." *Sepega* v. *DeLaura*, supra, 326 Conn.     . In reaching this conclusion, I agreed with the New Mexico Supreme Court's recent observation in *Baldonado* v. *El Paso Natural Gas Co.*, 143 N.M. 288, 293, 176 P.3d 277 (2008), that grounding the firefighter's rule in public policy allows for an "approach [that] will encourage the public to ask for rescue while allowing professional rescuers to seek redress in limited but appropriate circumstances." (Internal quotation marks omitted.) *Sepega* v. *DeLaura*, supra,     .

In *Sepega*, I agreed with the enumeration of the firefighter's rule by the Rhode Island Supreme Court in *Ellinwood* v. *Cohen*, 87 A.3d 1054, 1057–58 (R.I. 2014), namely, that an injured first responder[3] is barred "from maintaining a negligence action against a tortfeasor whose alleged malfeasance is responsible for bringing the officer to the scene of a fire, crime, or other emergency where the officer is injured. . . . To be shielded from liability under the public-safety officer's rule, the defendant, or alleged tortfeasor, must establish three elements: (1) that the tortfeasor injured the [first responder] . . . in the course of [the first responder's] employment; (2) that the risk the tortfeasor created was the type of risk that one could reasonably anticipate would arise in the dangerous situation which [the first responder's] employment requires [him or her] to

encounter; and (3) that the tortfeasor is the individual who created the dangerous situation which brought the [first responder] . . . to the . . . accident scene . . . ." (Internal quotation marks omitted.) *Sepega* v. *DeLaura*, supra, 326 Conn.    .

With respect to the circumstances under which it is appropriate for our first responders to seek redress, I found instructive the Kansas Supreme Court's recent formulation of exceptions to the firefighter's rule in *Apodaca* v. *Willmore*, 306 Kan. 103, 392 P.3d 529 (2017), under which "a law enforcement officer will not be barred from recovery [1] for negligence or intentional acts of misconduct by a third party, [2] if the individual responsible for the [officer's] presence engages in a subsequent act of negligence after the [officer] arrives at the scene, or [3] if an individual fails to warn of known, hidden dangers on his premises or misrepresents the nature of the hazard where such misconduct causes the injury to the [officer]." (Footnote omitted; internal quotation marks omitted.) *Sepega* v. *DeLaura*, supra, 326 Conn.    .

Assuming the applicability of the firefighter's rule, the plaintiff argues that the subsequent negligence exception allows him to maintain this action against the defendant. Specifically, the plaintiff argues that, "[w]hether [he] even came to the [defendant's facilities] in the exercise of *any* official capacity, he was clearly not summoned by the [defendant]. He was, thus, injured not by the negligence which caused his engagement (the accident on the highway), but rather—once he completed his official duties—by the [defendant's] *subsequent* negligence in failing properly to control a dangerous psychiatric patient who had been previously delivered to its custody." (Emphasis in original.) I disagree. Rather, in concluding that the plaintiff's claim is barred by the firefighter's rule—despite the fact that he acted independently and was not summoned by the defendant's staff to aid in controlling Pariseau—I find highly instructive the decision of the California Court of Appeal in *Seibert Security Services, Inc.* v. *Superior Court*, 18 Cal. App. 4th 394, 22 Cal. Rptr. 2d 514 (1993), the facts of which are remarkably similar to the present case.

In *Seibert Security Services, Inc.*, a police officer, John Migailo, had brought a suspect in custody to a hospital for examination of possible injuries. Id., 402. While Migailo was doing paperwork, a psychiatric patient became abusive toward a privately employed security guard and another police officer. Id. At the time, the patient "was restrained in a chair; Migailo asked that he be handcuffed for greater control, but [the security guard] failed to do so. Shortly thereafter, [the patient] stood up and grabbed for [the security guard's] baton, and Migailo helped subdue him." Id. The patient "was then handcuffed and put in an isolation

cell, but the handcuffs were taken off because he seemed 'pretty pleasant'" to another security guard, who believed that the patient was abusive toward only black persons. Id. Within fifteen minutes, however, the patient attacked the second security guard, who then called for help. Id., 402–403. Migailo then helped subdue the patient again and was injured. Id., 403.

The California court rejected the argument that the firefighter's rule did not apply because Migailo's "presence was unrelated to the negligence which caused his injury." Id., 407. The court noted that, while at the hospital, Migailo "was performing one duty—completing paperwork relating to the injured suspect—when the alleged negligence of [the security guards] caused him to initiate a new and different law enforcement action and attempt to subdue [the patient]. While the conduct of [the security guards] may have been 'independent of and unrelated to' the conduct which originally brought Migailo to the hospital, it is factually undisputed that it was the *immediate cause* of Migailo's presence in or near the holding cell . . . ." (Emphasis in original.) Id., 411. The court emphasized that "the fortuitous presence of such personnel cannot mean that any negligent conduct which creates a crisis to which such personnel react becomes actionable in tort . . . ." Id. It observed the inequity of "awarding tort recovery to the officer who happens to be at the scene when a negligently caused incident occurs, but barring recovery for the officer who responds to a radio call. We find such distinctions untenable and inconsistent with the long-established purpose of the [firefighter's] rule." Id., 410; see also *Kelhi* v. *Fitzpatrick*, 25 Cal. App. 4th 1149, 1158–60, 31 Cal. Rptr. 2d 182 (1994) (The court followed *Seibert Security Services, Inc.*, and held that the firefighter's rule barred claims of a highway patrol officer who was injured while blocking traffic from runaway tires because "despite the fortuitous nature of [officer's] presence" riding department motorcycle on way to work, "the runaway tires were a significant factor in prompting [his] subsequent actions. Once aware of the crippled truck and the runaway tires, [the officer] unhesitatingly reacted as though on duty, which he was, and as though he had been summoned to deal with those precise hazards."); cf. *Hodges* v. *Yarian*, 53 Cal. App. 4th 973, 984–85, 62 Cal. Rptr. 2d 130 (1997) (Following *Seibert Security Services, Inc.*, and holding that firefighter's rule barred claim of off-duty deputy sheriff injured while apprehending burglar in neighbor's garage, because "original reason" deputy was in garage was "irrelevant" and apprehension of criminal suspect is "precisely the [type] of public [function] the taxpayers expect, pay, and equip . . . [police] officers to perform. When a [police] officer assumes responsibility for performing such functions and is injured in the process, his or her recourse is in the system of special public benefits established to compensate the officer for such

injuries." [Internal quotation marks omitted.]).

Similarly, in *Higgins* v. *Rhode Island Hospital*, 35 A.3d 919, 921 (R.I. 2012), the plaintiff, a firefighter and emergency medical technician, was present in a hospital emergency room after transporting a patient there by ambulance. A nurse asked the plaintiff for assistance in restraining an emotionally disturbed patient who was shouting and spitting at her, so that she could administer medication to him. Id. The plaintiff was injured while attempting to restrain the patient in conjunction with two private security guards contracted by the hospital. Id., 921–22. In holding that the plaintiff's claim against the hospital and the security firm was barred by the firefighter's rule, the Rhode Island Supreme Court rejected his argument that "the firefighter's rule should bar claims only in those limited situations when an emergency requires the firefighter to go to the scene, and that for the rule to apply, injury must arise out of the same circumstances that originally brought the firefighter to the scene. [The plaintiff] points out that the emergency that caused him to go to the hospital in the first place had been resolved and that his efforts to assist the nurse in subduing the unruly patient were not a requirement of his job." Id., 923.

The Rhode Island court emphasized in *Higgins* that the firefighter's rule "was never intended to impose a literal requirement for the alleged tortfeasor to have called the [first responder] to the scene in order for the rule to apply. . . . What is required is that there be some nexus or connection between the alleged tortfeasor and the emergency that brought the [first responder] to the place where he or she was injured." (Citations omitted; internal quotation marks omitted.) Id. The court held that the hospital and its nurse were "the allegedly negligent tortfeasors who caused the [plaintiff] to go to the place where he was injured," and rejected the plaintiff's "argument that he was injured in an intervening incident that occurred at the original emergency scene." Id., 923–24. Focusing on the nurse, the court emphasized that the plaintiff, as a firefighter and emergency medical technician, "was responding to a citizen who was in distress and who was at risk of being injured by an unruly patient. Thus, he was reacting to an emergency as opposed to a routine, previously scheduled call." Id., 924. The court emphasized that when the plaintiff "completed his original task of transporting the first patient to the hospital, he left the emergency scene involving the first patient and moved to a new emergency scene after a nurse at the hospital requested [his] assistance with a difficult patient. At that point, the first emergency ended and a new emergency, allegedly created by the negligent restraint of the patient, began." Id., 925; see *Read* v. *Keyfauver*, 233 Ariz. 32, 34–37, 308 P.3d 1183 (App. 2013) (firefighter's rule barred claim of on-duty police officer injured while extricating plaintiff from wrecked vehicle, despite fact

that officer's actions exceeded his obligations because "[a]pplication of the rule . . . does not . . . turn on [the officer's] responsibilities and obligations once he arrived on the scene; rather, the key to the analysis is whether [the officer's] on-duty obligations as a law enforcement officer compelled his presence at the scene in the first instance"); *Kennedy* v. *Tri-City Comprehensive Community Mental Health Center, Inc.*, 590 N.E.2d 140, 145 (Ind. App. 1992) (firefighter's rule "particularly suited" to bar claim of police officers summoned by group home to assist with emotionally disturbed resident).

These cases demonstrate that, for purposes of the firefighter's rule, it was of no moment that the plaintiff in the present case, as an on-duty police officer, did not act in response to a formal request by the defendant for assistance, but rather, exercised his own initiative to check on, and ultimately subdue, Pariseau. I recognize that, "while the firefighter's rule may be a wise one, implementation often depends on fortuitous circumstances," and that, at least in some ways, its application to the present case would have rewarded the plaintiff "had he chosen to ignore his duty, and penalize[d] him for his courage and conscientiousness" in voluntarily acting to restrain Pariseau. *Kelhi* v. *Fitzpatrick*, supra, 25 Cal. App. 4th 1161. Nevertheless, the significant public policy underlying the firefighter's rule; see *Sepega* v. *DeLaura*, supra, 326 Conn. (*Robinson, J.*, concurring); leads me to conclude that the defendant did not owe the plaintiff a duty of care in this situation, thus, barring the plaintiff's negligence claims. Accordingly, I conclude that the trial court properly sustained the defendant's objection to the substitute complaint and rendered judgment accordingly.

Because I would affirm the judgment of the trial court in favor of the defendant, I respectfully dissent.

[1] I note that I agree with, and join in, part I of the majority's opinion.

[2] The standards governing review of a motion to strike are well established. See, e.g., *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 648–49, 126 A.3d 569 (2015).

[3] I note that the doctrine known in Connecticut as the firefighter's rule has been described in other jurisdictions in broader terms such as the "public safety officer's rule" or the "professional rescuer doctrine." *Sepega* v. *Delaura*, supra, 326 Conn. n.1 (*Robinson, J.*, concurring). As in *Sepega*, I refer to police officers, firefighters, and emergency medical technicians, collectively, as first responders.