Frank MARTELLUCCI, IV

v.

**FEDERAL DEPOSIT INSURANCE
CORPORATION.**

**No. 98–586–Appeal.**

Supreme Court of Rhode Island.

April 11, 2000.

Stephen P. Levesque, Steven A. Moretti, for Plaintiff.

Robert P. Corrigan, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The public-safety-officer's rule, when applicable, bars police officers, firefighters, and other public-safety officials from bringing tort actions against property owners and other alleged wrongdoers if the negligent conduct of such parties injures the officer when he or she is responding to or investigating some work-related emergency.[1] Here, the police-officer plaintiff, Frank Martellucci, IV (Martellucci), appeals from the entry of summary judgment in favor of the defendant, Federal Deposit Insurance Corporation (FDIC). Martellucci contends that the Superior Court erred in its application of the rule to bar his claims. We ordered the parties to show cause why we should not decide this appeal summarily. After reviewing their submissions and considering their oral arguments, we conclude that no such cause has been shown. Hence, we proceed to decide the appeal at this time.

## Facts and Travel

On March 17, 1992, Martellucci was on duty as a Cranston police officer when he responded to a silent alarm in an office building at 2220 Plainfield Pike in Cranston. A company called Insurance Resources (IR) occupied the office protected by this alarm. IR rented this office from the FDIC, which had taken control of the property as a liquidating agent from the owner, First Mutual Bank for Savings. While he was responding to the alarm, Martellucci stepped into a pothole in the building's parking lot and injured himself.

Martellucci sued the FDIC for negligent maintenance of the parking lot. After three years of discovery, the FDIC moved for summary judgment, arguing that even when the court viewed the facts in the light most favorable to Martellucci, the public-safety-officer's rule barred him from recovering on his tort claims. A Superior Court motion justice agreed, granted the FDIC's motion, and entered judgment in its favor. On appeal, Martellucci asserts that the motion justice erred in her application of the rule.

## Analysis

■ For the public-safety-officer's rule to bar an injured officer's claims against an alleged tortfeasor, defendant must establish that: "(1) the officer was injured in the course of performing tasks relating to his or her employment, (2) the risk of injury was one that the officer could reasonably anticipate would arise in the dangerous situations that the officer's employment typically required him or her to encounter, and (3) the alleged tortfeasor was the individual responsible for bringing the officer to the scene of a potential crime, fire, or other emergency where the injury then occurs." *Day v. Caslowitz*, 713 A.2d 758, 760 (R.I.1998).

In *Day*, the rule barred a police officer from suing a homeowner for damages that

1. *See, e.g., Day v. Caslowitz*, 713 A.2d 758 (R.I.1998). Having evolved from the common-law firefighter's rule, the rule has been referred to variously as the firefighter's rule, the police-officer's rule, or more broadly, the public-safety-officer's rule. *Id.* at 759. Although courts originally adopted the rule with respect to firefighters, most jurisdictions now also apply it to preclude actions by police officers and other public-safety officials against negligent property owners. *See, e.g., Pottebaum v. Hinds*, 347 N.W.2d 642 (Iowa 1984); *Kreski v. Modern Wholesale Electric Supply Co.*, 429 Mich. 347, 415 N.W.2d 178 (1987); *Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983). In *Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 439 (R.I.1993), our Court joined these other jurisdictions in similarly extending the rule to bar police-officer suits when the conditions for its application are satisfied. *See id.* (collecting cases).

resulted when he slipped and fell on an icy walkway after responding to a security alarm. *Id.* at 759. The officer argued that the condition that caused his injuries was not the security alarm but the ice-covered walkway. Because that condition did not create the occasion for his presence at the scene, the public-safety-officer's rule, he suggested, should not preclude his claim. *Id.* at 760. We disagreed, reasoning that "the rule has not been limited to barring claims based upon the very same alleged negligence (if any) that occasioned the officer's presence at the scene." *Id.* Moreover, we reiterated in *Day* that, as a matter of law, police officers "assume all normal risks inherent in their duties when they accept their positions * * *." *Id.* (quoting *Mignone v. Fieldcrest Mills,* 556 A.2d 35, 39 (R.I.1989)).

Although the facts of *Day* were similar to those in the case at bar, Martellucci attempts to distinguish his case by arguing that, in contrast to *Day,* the alleged wrongdoer in this case was not the party responsible for installing the alarm that brought the officer to the property. Thus, even though Martellucci does not dispute the existence of the first two elements for applying the public-safety-officer's rule, he asserts that the court erred in its application of the third element because the FDIC was not the entity "responsible for bringing the officer to the scene of a potential crime * * *." *Day,* 713 A.2d at 760. On the contrary, he asserts, it was IR, the commercial tenant whose silent alarm summoned Martellucci to the scene, that was the entity responsible for bringing him to the parking lot. Therefore, he contends, the FDIC, in its capacity as IR's landlord and liquidating agent for the property, should be treated as an independent third-party tortfeasor that is not entitled to invoke the rule's protection. *Cf. Aetna Casualty & Surety Co. v. Vierra,* 619 A.2d 436, 439–40 (R.I.1993) (refusing to apply the rule when a police officer was injured by an uninsured motorist whose car struck the officer while she was directing traffic at an accident scene).

In *Vierra,* a police officer was allowed to recover under the uninsured motorist provisions of her automotive liability policy because the uninsured motorist whose car struck her was not "the individual whose conduct gave rise to the very need for [the officer's] services," on that occasion. 619 A.2d at 440. In other words, because the alleged tortfeasor in *Vierra* was not "the individual who created the dangerous situation which brought the police officer or firefighter to the crime scene, accident scene, or fire," we determined that the rule did not apply. *Id.* at 439. Martellucci argues that the application of this third prong of the *Vierra* test also should allow him to proceed in his suit against the FDIC.

But *Vierra* is distinguishable from this case. There, we held that the rule did not bar the officer from suing an alleged tortfeasor (and thus, from recovering uninsured-motorist benefits from his own insurer) because the officer's injury was caused by a subsequent and independent tortious act, one that was unconnected to the circumstances that brought the officer to the accident scene. *Id.* at 438. Thus, we held that the rule was inapplicable because "[t]he injustice [of allowing the public-safety officer to sue] arises when a police officer or firefighter seeks to recover from the individual who created the need for his or her employment, not in situations in which a tortfeasor by way of a subsequent and independent act of negligence injures one of these officials." *Id.*

But here the alleged act of negligence—the FDIC's failure to maintain the parking lot—was not independent of and subsequent to the need for Martellucci's employment at this location. Rather, the FDIC's status (1) as landlord to the tenant whose activated alarm brought Martellucci to the scene and (2) as liquidating agent for the property on which Martellucci was injured indicates that its alleged negligence in failing to maintain the property was both related to and antecedent to the

need for Martellucci's employment at this location. Thus, in its capacity as IR's landlord and as liquidating agent for the property that included IR's leasehold, the FDIC's alleged negligence in failing to maintain the parking lot that served IR's office was not a "subsequent and independent act of negligence" that had nothing to do with "the individual who created the need for [Martellucci's] employment." *Id.* As the motion justice reasoned, *Vierra*'s third prong was never intended to impose a literal requirement for the alleged tortfeasor to have called the public-safety officers to the scene in order for the rule to apply. Nor, as the motion justice remarked, does the rule's application turn on "whether someone has a leasehold versus a fee simple" interest in the property where the injury occurs. Rather, the third prong of the rule—"that the tortfeasor is the individual who created the dangerous situation which brought the police officer or firefighter to the crime scene, accident scene, or fire," *id.* at 439—is meant to assure that some nexus or connection exists between the alleged wrongdoer and the event or emergency that caused the public-safety officer's presence at the location where the officer is injured. As the motion justice concluded: "The gist of that third prong is to make sure there is some connection between the property itself and the police officer being on the property as a result of a call to the property."

For these reasons, we are of the opinion that the motion justice did not err in applying the rule to bar Martellucci's claims in this case. As we explained in *Day,* when the officer's injury resulted from "the risks inherent in responding to potential emergencies like this one," the public-safety-officer's rule should preclude the action against an alleged tortfeasor who had no opportunity to prepare the property for the officer's presence. *Day,* 713 A.2d at 762. To bar the rule from applying when, as here, some cause or entity other than the allegedly negligent property owner, occupier, or other responsible party calls the police or firefighters to a potential emer-

gency would defeat the underlying purpose of the rule.

Indeed, if we were to accept Martellucci's argument, we would have to countenance injured-on-duty police officers and firefighters maintaining lawsuits against allegedly negligent property owners and occupiers merely because they did not happen to cause the officers' arrival at a potential crime scene or fire site. Under this reasoning, a police officer injured while investigating suspicious activity observed at a house could sue an allegedly negligent homeowner if a neighbor happened to call the police regarding that activity, but not when an alarm, installed by the owners, summoned the police to the scene. Similarly, we would have to allow an injured public-safety-officer's suit against an allegedly negligent property owner to proceed when a tenant or some third party reports a fire on the premises but not if the landlord's smoke alarm triggers the firefighters' presence at the scene. Because such distinctions based on the precise nature of the defendant's property interest and on who or what has caused the public-safety officers to arrive at the scene where an officer is injured run counter to the spirit and purpose of the rule, we hold that the motion justice did not err in rejecting this argument.

We also note that, in related circumstances, other courts have spurned contentions seeking to evade the rule's application. For example, in deciding whether to apply the rule, some courts have refused to parse the various common-law classifications that govern the duty of care owed to third parties by those who possess a property interest in the premises. *See, e.g., Rosa v. Dunkin' Donuts of Passaic,* 122 N.J. 66, 583 A.2d 1129 (1991). In *Rosa,* a police officer slipped on a white powdery substance in a Dunkin' Donuts store and suffered personal injuries while carrying an unconscious employee from the store. The court barred the officer from pursuing a tort claim against the store owner, indi-

cating that "technical formalistic classifications used to define varying duties of care" owed by owners to those who were present on their premises were not applicable in emergency situations. *Id.* at 1131. Instead, the court held, the property to which the police were summoned only had to have some connection with the officer's presence there to absolve those possessing an interest in the premises from liability. The court deemed it unfair for those possessing a property interest to be responsible in tort because a "police officer is summoned in circumstances of emergency where the landowner has not had time to prepare the premises for his [or her] arrival." *Id.* at 1132 (quoting *Maryland Casualty Co. v. Heiot,* 224 N.J.Super. 441, 540 A.2d 920, 922 (1988)).

Similarly, after the activation of IR's silent alarm, the FDIC in this case, as landlord and liquidating agent for the property, did not have time to prepare the parking lot for the police officer's arrival on the premises in response to the potential emergency signaled by the alarm. Thus, regardless of the precise nature of the FDIC's property interest and its non-involvement in summoning the police to the property, it still should not be held responsible to this officer for its alleged ordinary negligence in failing to maintain the parking lot.

As we stated in *Vierra,* public-safety officers "assume those risks which are known or can reasonably be anticipated to arise in the dangerous situation which their employment requires them to encounter." *Vierra,* 619 A.2d at 438. Here, it would be reasonable for a police officer responding to a nighttime alarm on private property to have known about or to have anticipated the possibility of falling or tripping over one or more unseen impediments on unfamiliar terrain at the scene of the alarm.

## Conclusion

Thus, because the rule precludes recovery, we deny the appeal and affirm the judgment in favor of the FDIC.