******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RICHARD T. O'DONNELL *v.* AXA EQUITABLE
LIFE INSURANCE COMPANY
(AC 44215)

Moll, Cradle and Bishop, Js.

*Syllabus*

The plaintiff brought a putative class action seeking to recover damages
from the defendant, an insurance company organized under New York
law, for its alleged breach of contract. The plaintiff and the other putative
class members had purchased variable annuity policies from the defen-
dant. The plaintiff alleged that the defendant had breached its contract
with him and the other putative class members by changing the invest-
ment strategy associated with their policies without seeking approval
from the New York State Department of Financial Services (NYDFS),
as required by the terms of the contract and New York law. The defendant
filed a motion to strike the original complaint, which the trial court
granted. The trial court concluded that the plaintiff had failed to ade-
quately allege that the defendant's actions caused him damages because
he did not allege that the NYDFS would have prevented the defendant
from implementing the new investment strategy had it known the full
extent of the changes that the new investment strategy would make to
the annuity policies. The plaintiff then filed an amended complaint
pursuant to the applicable rule of practice (§ 10-44). The defendant filed
a motion for entry of judgment or, alternatively, to strike the sole count
of the amended complaint. In granting the defendant's motion, the trial
court concluded that, despite certain new allegations, the plaintiff's
amended complaint was not materially different from the original com-
plaint and, therefore, the plaintiff had failed to file a new pleading within
the meaning of Practice Book § 10-44. The trial court rendered judgment
for the defendant, from which the plaintiff appealed to this court. *Held*:
1. The trial court improperly concluded that the plaintiff's amended com-
plaint was not materially different from his original complaint: when
viewed in the light most favorable to the plaintiff, the new allegations
set forth in the plaintiff's amended complaint constituted a good faith
effort to plead causation and address the legal insufficiency of the
original complaint identified by the trial court, as there were significant
factual additions describing the defendant's new investment strategy,
how it was implemented, and how it allegedly caused the plaintiff dam-
ages in specified amounts, independent of anything the NYDFS did or
did not do.
2. This court, having determined that the amended complaint was materially
different from the original complaint and, therefore, that the plaintiff
had not waived his right to appeal that ruling, concluded that the trial
court improperly granted the defendant's motion to strike the amended
complaint: the plaintiff alleged facts sufficient to state a cause of action
for breach of contract, as he included in his amended complaint, among
other things, facts describing how the defendant's breach allegedly
caused him damages, and, therefore, whether the plaintiff could prove
causation was a question for the finder of fact.

Argued October 12, 2021—officially released February 15, 2022

*Procedural History*

Action to recover damages for the defendant's alleged
breach of contract, and for other relief, brought to the
Superior Court in the judicial district of New Haven,
where the case was transferred to the judicial district
of Stamford-Norwalk; thereafter, the court, *Lee, J.*,
granted the defendant's motion to strike the plaintiff's
original complaint; subsequently, the court, *Hon.
Charles T. Lee*, judge trial referee, granted the defen-
dant's motion for judgment on the plaintiff's amended

complaint, and rendered judgment thereon for the defendant, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*David A. Slossberg*, with whom were *Sara A. Sharp*, and, on the brief, *Daniella Quitt*, pro hac vice, for the appellant (plaintiff).

*Jay B. Kasner*, pro hac vice, with whom were *Kurt Wm. Hemr*, pro hac vice, *John W. Cerreta* and *Thomas D. Goldberg*, for the appellee (defendant).

*Opinion*

BISHOP, J. In this putative class action, the plaintiff, Richard T. O'Donnell, appeals from the judgment of the trial court rendered after it granted the motion filed by the defendant, AXA Equitable Life Insurance Company,[1] for entry of judgment on the plaintiff's stricken complaint. On appeal, the plaintiff claims that the court improperly concluded that his amended complaint (1) was not "materially different" from his original complaint and (2) failed to adequately allege that the defendant's actions caused him damages.[2] We agree with the plaintiff, and, accordingly, we reverse the judgment of the trial court.

The plaintiff alleges the following facts in his amended complaint. The plaintiff is a resident of the state of Connecticut. The defendant is a company organized under New York law with its principal place of business also in New York. The defendant is authorized to do and does business in Connecticut. The defendant offers a broad portfolio of life insurance products and a variety of annuity products, including fixed deferred annuities, payout annuities, and variable annuities. A variable annuity, the product at issue in the present action, is a contract between the purchaser, also known as the "annuitant," and the insurance company. Pursuant to the contract, the insurance company agrees to make periodic payments to the annuitant, beginning either immediately or at some future date. The defendant's annuity policies permitted the policyholders to allocate their premiums toward various investment options, each with different risk-reward characteristics.

In November, 2008, the plaintiff purchased a variable annuity policy from the defendant. The policy that the plaintiff and other putative class members purchased permitted them to acquire, for an additional premium, a guarantee that certain benefits would increase by a minimum percentage each year.[3] The policy also included a reset provision, which provided that the value of guaranteed benefits could only increase and never decrease. The guarantee, in combination with the reset provision, effectively immunized the benefits of the policy from the risks of stock market volatility. The policy also provided that the defendant (1) would comply with all applicable laws, (2) had established and would maintain the accounts under New York law, (3) would not change the investment strategy for the variable annuity policy unless approved by the Superintendent of Insurance of New York State (superintendent) or deemed approved in accordance with such law or regulation, and (4) would not make a material change to the policy without prior approval of the superintendent. Although the policy did grant the defendant some discretion over investment options, it did not permit the defendant to make material changes to the investment strategy without complying with applicable New

York law.

In 2011, after the plaintiff had already purchased his annuity policy from the defendant, the defendant changed the investment strategy associated with the plaintiff's and other putative class members' policies. The defendant implemented the new investment policy, referred to as the "AXA Tactical Manager Strategy" (ATM Strategy), without seeking approval from the New York State Department of Financial Services (NYDFS), as required by the terms of the contract and New York law. The ATM Strategy was a material change to the investment policy pursuant to New York Insurance Law § 4240 (e),[4] which required the defendant to seek approval of the change from the NYDFS prior to its implementation. Under § 4240 (e), an amendment that changes the investment strategy is not automatically approved but, rather, is treated as an original filing. An amendment that does not change the investment strategy is automatically deemed approved after thirty days, unless the superintendent disapproves. Because the defendant did not properly inform the NYDFS of the nature of the changes and that the changes should be treated as an original filing, the ATM Strategy was automatically, but improperly, deemed approved. By not seeking the requisite approval from the NYDFS, the defendant breached the terms of the contract.

The plaintiff also alleged the following facts. The breach caused the plaintiff and other policyholders damages. To implement the ATM Strategy, the defendant sold all or substantially all of the plaintiff's and other policyholders' investment positions without their permission. This left the plaintiff's and other policyholders' accounts with no equity exposure. After the market recovered, the defendant bought these positions back at much higher prices, immediately resulting in substantial losses passed on to the plaintiff and other policyholders. In other words, alleged the plaintiff, the ATM Strategy reduced the defendant's risks and costs by using derivatives to hedge its own equity exposure to market volatility at the expense of the variable annuity customers who purchased their policies, in part, for the opportunity to benefit from market volatility. The ATM Strategy altered the very nature of the product held by policyholders. It materially changed the variable annuity products and reduced the value of the annuity accounts. The reduction of the value of the accounts also diminished the periodic reset amounts built into the policies. In the case of the plaintiff, the defendant's breach cost him approximately $90,000, or almost 20 percent of his original investment. The members of the putative class lost in excess of $100 to $200 million dollars during the relevant period.

Soon after the defendant's implementation of the ATM Strategy, the NYDFS commenced an investigation of the defendant concerning the implementation of the

ATM Strategy. The focus of the investigation was whether the defendant had properly informed the NYDFS of the implementation of the ATM Strategy. After the conclusion of the investigation, the NYDFS found that the defendant had failed to seek the requisite approval for the material changes to the investment strategy under the ATM Strategy. Specifically, the NYDFS found that while the ATM Strategy effectively changed the nature of the product the policyholders had purchased, the defendant failed to explain in its filings with the NYDFS that it was making such changes to the policies. The absence of detail and discussion in the filings regarding the significance of the implementation of the ATM Strategy had the effect of misleading the NYDFS regarding the scope and potential effects of the changes. The NYDFS had approved the filings on the false belief that the changes were merely routine additions of funds or similar alterations. As a result, the defendant entered into a consent order with the NYDFS on March 14, 2014.[5] According to the consent order, "[h]ad the [NYDFS] been aware of the extent of the changes, it may have required that the existing policyholders affirmatively opt in to the ATM Strategy." The consent order required the defendant to (1) pay $20 million to the NYDFS, (2) seek all necessary approvals in connection with the ATM Strategy in the future, and (3) issue written reports to the NYDFS concerning changes to certain accounts on a quarterly basis for a period of five years from the date of the consent order.

The plaintiff commenced this putative class action against the defendant on August 21, 2015. In his complaint, the plaintiff asserted a single claim for breach of contract against the defendant. On December 27, 2018, the defendant filed both a motion to strike the sole count of the plaintiff's complaint and a motion to dismiss the plaintiff's complaint to the extent that it purported to assert claims on behalf of members of a putative class who are not Connecticut residents. The court heard oral argument on the two motions on May 6, 2019.

The court granted the defendant's motion to strike, concluding that "the causation of damages the plaintiff has alleged for his breach of contract claim are speculative, and that, as a result, his complaint fails to plead facts that sufficiently allege the causation element of his breach of contract claim." The plaintiff then filed an amended complaint pursuant to Practice Book § 10-44.[6] The defendant filed a motion for entry of judgment, or alternatively, to strike the sole count of the amended complaint. After hearing oral argument on the defendant's motion, the court granted the defendant's motion for entry of judgment and rendered judgment in favor of the defendant. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable principles

of law and standard of review that guide our analysis. "Our review of the court's ruling on the defendant['s] motion to strike is plenary." *St. Denis* v. *de Toledo*, 90 Conn. App. 690, 694, 879 A.2d 503, cert. denied, 276 Conn. 907, 884 A.2d 1028 (2005). "In ruling on a motion to strike, we take the facts alleged in the complaint as true." Id., 691. "After a court has granted a motion to strike, the plaintiff may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . If the allegations in [the plaintiff's] substitute complaint are not materially different from those in his original complaint . . . the waiver rule applies, and the plaintiff cannot now challenge the merits of the court's ruling striking the amended complaint." (Citations omitted; internal quotation marks omitted.) Id., 693–94; see also *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 851, 168 A.3d 479 (2017) ("if the allegations in a complaint filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken complaint, the party bringing the subsequent complaint cannot be heard to appeal from the action of the trial court striking the subsequent complaint" (internal quotation marks omitted)). In short, by filing an amended complaint, a plaintiff is said to have waived the right to appeal from the court's order striking the original complaint.

"If the plaintiff elects to replead following the granting of a motion to strike, the defendant may take advantage of this waiver rule by challenging the amended complaint as not materially different than the [stricken] . . . pleading that the court had determined to be legally insufficient. That is, the issue [on appeal becomes] whether the court properly determined that the [plaintiff] had failed to remedy the pleading deficiencies that gave rise to the granting of the [motion] to strike or, in the alternative, set forth an entirely new cause of action. It is proper for a court to dispose of the substance of a complaint merely repetitive of one to which a demurrer had earlier been sustained." (Internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 850. If the amended complaint is not materially different, the court properly granted the motion to strike and the plaintiff is then bound by the court's judgment striking the amended complaint. See *Parker* v. *Ginsburg Development CT, LLC*, 85 Conn. App. 777, 782, 859 A.2d 46 (2004) (holding that amended complaint was not materially different, binding plaintiff to court's judgment striking amended complaint).

"However, there is an exception to the waiver rule. If the plaintiff pleads facts in the substitute complaint which are 'materially different' from those in the original complaint, then the waiver rule does not apply."

Id., 780. When the waiver rule does not apply, the plaintiff can challenge the merits of the court's ruling striking the amended complaint. See *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 76, 700 A.2d 655 (1997) (reaching merits of court's ruling striking amended complaint after concluding waiver rule did not apply).

I

The plaintiff first claims that the trial court improperly concluded that his amended complaint was not "materially different" from his original complaint and, therefore, that he had failed to file a new pleading within the meaning of Practice Book § 10-44. Specifically, the plaintiff claims that the court erred by applying the wrong legal standard in its review of the amended complaint, causing it to conclude that the amended complaint was not "materially different" from the original complaint. The plaintiff claims that the changes in the amended complaint are material because they reflect his good faith effort to cure the causation defect identified by the court in striking the original complaint. We agree.

"The law in this area requires the court to compare the two complaints to determine whether the amended complaint advanced the pleadings by remedying the defects identified by the trial court in granting the earlier motion to strike. . . . In determining whether the amended pleading is 'materially different,' we read it in the light most favorable to the plaintiff." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 851.

To determine whether the amended complaint was "materially different" from the original complaint, "we first examine the ruling striking the first . . . complaint." *St. Denis* v. *de Toledo*, supra, 90 Conn. App. 694. In the ruling in the matter at hand, the court held that the complaint alleged insufficient facts to support the requisite element of causation. The court concluded that the causation of damages the plaintiff allegedly suffered was speculative. The court found the present case similar to *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 193, 90 A.3d 219 (2014) (*Meadowbrook*), because, according to the court, the plaintiff based his damages on what the NYDFS may have done had the defendant adequately informed it about and explained the significance of the changes the ATM Strategy made to the annuity policies. The court explained that the plaintiff did not allege that, had the NYDFS known the full extent of the changes that the ATM Strategy made, it would have prevented the defendant from implementing it. Therefore, the plaintiff could not rely on what the NYDFS may have done in order to plead causation. The court concluded "that the plaintiff's breach of contract claim fails as a matter of law because he has failed to adequately allege that the

defendant's actions caused him damages." It is clear from the court's ruling that the defect it identified in striking the original complaint was that the complaint alleged insufficient facts to support the requisite element of causation, specifically, that the defendant's actions caused the plaintiff damages.

In the ruling that is the subject of this appeal, the court reviewed the amended complaint and ultimately concluded that it was not "materially different from the original complaint" and was not a " 'new pleading' " within the meaning of Practice Book § 10-44. The plaintiff argues that the court improperly concluded that the amended complaint was not "materially different" from the original complaint "based solely on its finding that the plaintiff's new allegations failed to *cure* the defect identified by the trial court in striking the original complaint." (Emphasis added.) The plaintiff argues that "[u]nder the proper legal standard, however, the fact that changes contained in an amended pleading fail to *successfully* cure an earlier defect does not determine the materiality of such changes. . . . [C]hanges in an amended pleading are material if they reflect a *good faith effort* to file a complaint that states a cause of action in a manner responsive to the defects identified by the trial court in its grant of the motion to strike the earlier pleading." (Emphasis in original; internal quotation marks omitted.) The plaintiff contends that "the amended complaint reflects [a] good faith effort to remedy the defect previously identified by the trial court in striking the original complaint" because the amended complaint "included new facts intended to render his claim legally sufficient by providing further support for his allegation that the defendant's unlawful implementation of the ATM strategy resulted in [his] damages." We agree with the plaintiff.

Our Supreme Court has explained that "[c]hanges in the amended pleading are material if they reflect a good faith effort to file a complaint that states a cause of action in a manner responsive to the defects identified by the trial court in its grant of the motion to strike the earlier pleading. . . . Factual revisions or additions are necessary; mere rewording that basically restate[s] the prior allegations is insufficient to render a complaint new following the granting of a previous motion to strike. . . . The changes in the allegations need not, however, be extensive to be material." (Citations omitted; internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 852–53, citing, inter alia, *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 75–76.

On the basis of our review of the decision striking the original complaint and the plaintiff's amended complaint, we conclude that the changes are materially different.

The plaintiff's amended complaint includes the fol-

lowing relevant additions to the original complaint: "[The] [d]efendant, in breach of the express language of its contract with the plaintiff, took exclusive control of the plaintiff's investment portfolio and sold all or substantially all of the plaintiff's entire equity portfolio for its exclusive benefit and to the extreme financial detriment of the plaintiff. . . . When [the defendant] implemented the ATM Strategy in 2011, [the defendant] sold all or substantially all of the plaintiff's and the other variable annuity policyholders' investment positions without their permission. Later in 2011, after the market rallied, [the defendant] then bought these positions back at much higher prices. . . . [The] plaintiff and other policyholders suffered large losses . . . . Soon after [the defendant's] implementation of the ATM Strategy in 2011, and in the face of the resulting losses suffered by policyholders, the [NYDFS] commenced its investigation into [the defendant].

\* \* \*

"The mechanics of the implementation of the ATM Strategy were the following: [The defendant] sold the equivalent of all of the equity securities in the plaintiff's investment account by means of selling matching S&P 500 futures contracts. This left the plaintiff's account with no equity exposure. When [the defendant] repurchased the S&P 500 futures contracts, it did so at a higher price, immediately resulting in substantial losses passed onto the plaintiff and other similarly situated policyholders. In summary, [the defendant] used the ATM Strategy to hedge its equity exposure and pass on the losses to its clients. By way of example, in the case of the plaintiff, [the defendant's] actions in liquidating his equity exposure cost him approximately $90,000, or almost 20 [percent] of his original investment. The class lost in excess of $100 to $200 million during the relevant period. . . . Shortly thereafter, [the defendant] ceased using the ATM Strategy in the policies purchased by the class members. . . . Unfortunately, by the time the NYDFS commenced its investigation, the plaintiff's and other policyholders' non-speculative losses were etched in stone. . . . As discussed above, the NYDFS issued the consent order regarding its investigation into [the defendant's] implementation of the ATM Strategy on March 17, 2014. . . . As the ATM Strategy was no longer being applied to any existing policies at that time, the [NYDFS'] findings under the consent order were directed towards [the defendant's] future implementation of the ATM Strategy. . . . In the consent order, the NYDFS required [the defendant] to agree, at minimum, to seek all necessary approvals with regard to New York Insurance Law § 4240 (e) and provide [NYDFS]-approved communications to policyholders when revising fund choices in connection with the ATM Strategy in the future. . . . In addition, the NYDFS required [the defendant] to issue a written report to [the NYDFS] concerning changes to the plan

of operations for separate accounts A, 45, and 49 and respond to the [NYDFS'] questions thereon on a quarterly basis for a period of five years. . . . Although the market conditions which triggered [the defendant's] initial use of the ATM Strategy reoccurred, [the defendant] has never sought approval from the NYDFS to use the ATM Strategy again in the manner in which it was used in 2011. The ATM Strategy has not been used in connection with separate accounts A, 45, and 49 since the NYDFS commenced its investigation in 2011. . . . Nevertheless, the damages suffered by the plaintiff and policyholders which resulted from [the defendant's] unlawful implementation of the ATM Strategy in 2011 had already been incurred. . . . Had [the defendant] sought to use the ATM Strategy again, it would have been required to, at minimum, provide policyholders with notice via communications approved by the NYDFS prior to implementing the ATM Strategy." (Internal quotation marks omitted.)

Despite these additions, the trial court concluded that the amended complaint was not materially different from the original complaint because the new allegations failed to address what the court viewed as the essential failing of the original complaint, namely, that causation was "premised on speculation as to what the regulatory body might have done with respect to the changes in the variable annuity policy at issue."

Factual additions, even if limited, can be read as an attempt to address the defect identified by the trial court in striking the plaintiff's original complaint. *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 74–75 (only difference between original complaint and amended complaint was addition of specific location in Bahrain to which plaintiff was to be sent for employment, which addressed defect in original complaint). Furthermore, "adding statutory and constitutional references, even if inapposite, may be read as attempting to address the legal insufficiency specifically identified by the trial court . . . making the count materially different." (Internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 854 n.7, citing *Emerick* v. *Kuhn*, 52 Conn. App. 724, 734, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). Additional language can reflect a good faith effort to remedy the defect identified by the court in striking the original complaint. See *Doe* v. *Marselle*, 38 Conn. App. 360, 365, 660 A.2d 871 (1995) (despite failing to include word "wilful" in amended complaint after being alerted to defect, additional language sufficient to demonstrate good faith effort), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996). However, merely reiterating or rewording the same allegations in the amended complaint as in the original complaint does not reflect a good faith effort to address the defect identified in the original complaint and, therefore, does not constitute

a material change. See, e.g., *St. Denis* v. *de Toledo*, supra, 90 Conn. App. 696.

The plaintiff's amended complaint does more than merely reiterate the facts alleged in the original complaint. There are significant factual additions describing how the defendant's actions caused the plaintiff damages apart from whatever action the NYDFS may or may not have taken, and these allegations attempt to address the legal insufficiency identified by the trial court. Specifically, the amended complaint includes new facts describing the defendant's ATM Strategy, how it was implemented, and how it allegedly caused the plaintiff damages in specified amounts. The amended complaint contains factual additions that allege that, pursuant to the ATM Strategy, the defendant "sold the equivalent of all of the equity securities in the plaintiff's investment account" by selling certain futures contracts that "left the plaintiff's account with no equity exposure." According to the amended complaint, the defendant then repurchased those futures contracts "at a higher price, immediately resulting in substantial losses passed onto the plaintiff and other similarly situated policyholders." The amended complaint then alleges that, "[i]n summary, [the defendant] used the ATM Strategy to hedge its equity exposure and pass on the losses to its clients. By way of example, in the case of the plaintiff, [the defendant's] actions in liquidating his equity exposure cost him approximately $90,000 or almost 20 [percent] of his original investment. The [putative] class lost in excess of $100 to $200 million during the relevant period." These additions seek to explain, in more detail, how the defendant's actions, independent of anything the NYDFS did or did not do, caused the plaintiff damages.

We conclude that, when viewed in the light most favorable to the plaintiff, the new allegations set forth in the plaintiff's amended complaint "constitute a good faith effort"; (internal quotation marks omitted) *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 857; to plead causation and, accordingly, the amended complaint is materially different from the original complaint.

## II

Because we conclude that the amended complaint is materially different from the original complaint and, therefore, the waiver rule does not apply, we address the plaintiff's challenge to the merits of the court's ruling striking the amended complaint. See *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 75–76 ("The plaintiff appears to have made a good faith effort to file a complaint that states a cause of action. We are persuaded, accordingly, that by failing to appeal the striking of the [original] complaint, the plaintiff has not waived his right to appeal from the merits of the motion to strike . . . his [amended] complaint."); see also *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 858

("The new allegations in the substitute complaint . . . materially differ from those in the original complaint for purposes of preserving the plaintiff's right to appeal after repleading pursuant to Practice Book § 10-44. Accordingly, we reach the merits of the plaintiff's claims on appeal.").

The plaintiff claims that the court improperly determined that the amended complaint failed to sufficiently plead causation. Specifically, the plaintiff claims that the court erred by (1) applying the wrong legal standard in concluding that the plaintiff's amended complaint failed to adequately plead causation and (2) relying upon findings of fact at the pleading stage. We agree.

In Connecticut, the complaint must "contain a concise statement of the facts constituting the cause of action . . . ." Practice Book § 10-20.[7] " 'Connecticut is a fact pleading jurisdiction . . . .' *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 626, 99 A.3d 1079 (2014). Therefore, a pleading must 'contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . .' Practice Book § 10-1.[8] The purpose of fact pleading is to put the defendant and the court on notice of the important and relevant facts claimed and the issues to be tried." (Footnote added; internal quotation marks omitted.) *Godbout* v. *Attanasio*, 199 Conn. App. 88, 111–12, 234 A.3d 1031 (2020). "A motion to strike shall be used whenever any party wishes to contest: (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . ." Practice Book § 10-39 (a).

"Whether the court applied the proper legal standard in ruling on the motion to strike presents a question of law over which we exercise plenary review. . . . The legal standard applicable to a motion to strike is well settled. The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . [The court takes] the facts to be those alleged in the complaint . . . and [construes] the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realis-

tically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) *Plainville* v. *Almost Home Animal Rescue & Shelter, Inc.*, 182 Conn. App. 55, 63, 187 A.3d 1174 (2018).

In Connecticut, "[t]he elements of a breach of contract action are [1] the formation of an agreement, [2] performance by one party, [3] breach of the agreement by the other party and [4] damages." (Internal quotation marks omitted.) *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, 194 Conn. App. 316, 329, 220 A.3d 890 (2019). "Although this court has intimated that causation is an additional element thereof . . . proof of causation more properly is classified as part and parcel of a party's claim for breach of contract damages." (Citation omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 149 Conn. App. 186. Causation focuses on whether the plaintiff's loss "may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself." (Internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 319, 514 A.2d 734 (1986). "[I]n order to recover for breach of contract, a plaintiff must prove that he or she sustained damages as a direct and proximate result of the defendant's breach." *Warning Lights & Scaffold Service, Inc.* v. *O & G Industries, Inc.*, 102 Conn. App. 267, 271, 925 A.2d 359 (2007). "Causation [is] a question of fact for the [fact finder] to determine . . . ." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 193.

In its motion for entry of judgment, the defendant argued that the amended complaint "[did] not sufficiently plead a breach of contract" because it "fail[ed] to plead facts that sufficiently allege the causation element." (Internal quotation marks omitted.) In the defendant's view, the "plaintiff impermissibly bases his damages on speculation concerning what the [NYDFS] may have done had certain regulatory filings made by [the defendant] not been deficient . . . ." (Internal quotation marks omitted.) At oral argument on the motion, the defendant argued that the plaintiff's amended complaint failed to adequately plead that the defendant's breach caused the plaintiff damages because the complaint included "no allegations of what would have happened had the [NYDFS] gotten the information," that the defendant was required to provide it, and whether the NYDFS "would . . . have done something differently." The defendant further argued that "the plaintiff pleads no facts that would allow the inference that had the [NYDFS] known the full extent of the changes, it would have prevented the defendant from implementing it or that the [NYDFS] would have required the defendant to allow existing policyholders to opt out or that it would have prevented implementation."

The plaintiff agreed that what the NYDFS would have

done had the defendant filed the requisite application under New York Insurance Law § 4240 (e) was speculative because the defendant did not follow the proper procedures, but asserted that what the NYDFS would have done had the defendant followed New York Insurance Law § 4240 (e) was not relevant to the court's consideration of the legal viability of the complaint. The plaintiff argued that the defendant breached the contract by not obtaining the requisite permission from the NYDFS to change the plaintiff's annuity policy, as required by the contract, and that the breach caused the plaintiff damages because the defendant "sold or substantially sold, the equity position, and repurchased it." According to the plaintiff, the "defendant unlawfully made a material change to the strategy that was designed to protect the defendant and it was done at the plaintiff's expense" and, therefore, "what would have happened had [the NYDFS] required notice [prior to the implementation of the ATM Strategy] is something we'll never know because it happened in 2011." In short, the plaintiff argued that because the defendant improperly changed the annuity policy without prior approval, the changes to the policy were automatically approved by the NYDFS, and this caused the plaintiff damages because the changes liquidated the plaintiff's equity exposure, resulting in damages to the plaintiff in the amount of approximately $90,000 or about 20 percent of his original investment. The plaintiff alleges that his damages were incurred immediately upon the implementation of the ATM strategy and, therefore, the speculation concerning what the NYDFS would have done had the defendant followed the proper procedures was entirely irrelevant.

In granting the defendant's motion to strike the original complaint, the court relied on *Meadowbrook Center, Inc.* v. *Buchman*, supra, 149 Conn. App. 193, to find that "the causation of damages the plaintiff has alleged for his breach of contract claim are speculative, and that, as a result, his complaint fails to plead facts that sufficiently allege the causation element of his breach of contract claim." The court stated: "Like the plaintiff in *Meadowbrook*, the plaintiff here bases his damages on speculation concerning what the NYDFS may have done had the defendant adequately informed and explained the significance of the changes that the ATM Strategy made." In granting the defendant's motion for entry of judgment on the amended complaint, the court referred to its reliance on *Meadowbrook* and held that "[i]n this case, the plaintiff did not supply the essential allegation of fact as to what the [NYDFS] would have done if the defendant had filed a proper disclosure in 2011, probably because this key element is inescapably a matter of speculation. Although the amended complaint contains several new allegations, they fail to address the essential failing of the plaintiff's single contract count, where causation is premised on speculation

as to what the regulatory body might have done with respect to the changes in the variable annuity policy at issue."

In response, the plaintiff claims that the court applied the wrong legal standard in relying on *Meadowbrook Center, Inc.* v. *Buchman*, supra, 149 Conn. App. 177. We agree with the plaintiff that *Meadowbrook* is inapposite to the present case. First, we note that *Meadowbrook* did not involve a motion to strike. Rather, *Meadowbrook* involved factual findings by the court and a judgment on the merits. In *Meadowbrook*, after a bench trial took place, the court rendered judgment for the plaintiff and awarded it damages. Id., 182–84. The defendant appealed and claimed, inter alia, that the award of damages stemming from his breach of the contract was impermissibly speculative. Id., 184. On appeal, this court reversed the judgment of the trial court, holding that because the "plaintiff failed to establish that its loss . . . naturally and directly resulted from the defendant's conduct, the award of [damages was] improper." Id., 194. In sum, *Meadowbrook* is materially distinct from the present case because the judgment in that case was rendered following a bench trial.

The plaintiff also claims that the court improperly relied on prospective findings of fact at the pleading stage to determine that he had failed to adequately plead causation. The plaintiff argues that, to the extent it is relevant, what the NYDFS might have done had the defendant followed the proper procedures is ultimately a question of fact reserved for the trier of fact after an evidentiary hearing. According to the plaintiff, at the pleading stage, his "amended complaint adequately alleges each element required to sustain a breach of contract action, including adequately alleging 'damages resulting from the breach.' "

At the pleading stage, a plaintiff is not required to prove that he sustained damages as a result of the defendant's breach. See *Godbout* v. *Attanasio*, supra, 199 Conn. App. 111–12 ("[A] pleading must contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . . The purpose of fact pleading is to put the defendant and the court on notice of the important and relevant facts claimed and the issues to be tried." (Citation omitted; internal quotation marks omitted.)). Rather, "[t]o survive a motion to strike, the plaintiff's complaint must allege all of the requisite elements of a cause of action." (Internal quotation marks omitted.) *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, supra, 194 Conn. App. 329.

Here, we conclude that the plaintiff has alleged facts sufficient to state a cause of action for breach of contract. The plaintiff has included in his amended complaint, among other things, facts describing how the defendant's breach has allegedly caused him damages.

Specifically, the plaintiff has alleged that his contract required the defendant to (1) comply with all applicable laws, (2) establish and maintain the plaintiff's annuity account pursuant to New York law, and (3) seek approval from the NYDFS prior to making a material change or a change to the investment strategy. The amended complaint alleges that the defendant did not seek approval from the NYDFS prior to implementing the ATM Strategy, as required by the contract, resulting in a breach. The plaintiff alleges that, as a result of the breach, the ATM Strategy automatically went into effect. Under the newly implemented ATM Strategy, the plaintiff alleges, the defendant sold the equivalent of all of the equity securities in the plaintiff's account, leaving his account with no equity exposure. Then, according to the plaintiff, the defendant repurchased the securities at a higher price, immediately resulting in the losses to him and the putative class.

"[Construing] the complaint in the manner most favorable to sustaining its legal sufficiency"; (internal quotation marks omitted) *Plainville* v. *Almost Home Animal Rescue & Shelter, Inc.*, supra, 182 Conn. App. 63; we conclude that these facts allege all of the requisite elements of a cause of action for breach of contract. Whether the plaintiff can prove causation properly should be left to the finder of fact. See *Meadowbrook Center, Inc.* v. *Buchman*, supra, 149 Conn. App. 193 ("[c]ausation [is] a question of fact for the [fact finder] to determine" (internal quotation marks omitted)).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The defendant changed its name in 2020 and is now known as the Equitable Financial Life Insurance Company. Because the defendant has been referred to as AXA Equitable Life Insurance Company in all prior proceedings, we use that name in this appeal.

[2] In his principal brief, the plaintiff sets forth four claims of error. For convenience, we have distilled the plaintiff's arguments and address them in the two aforementioned claims.

[3] The plaintiff seeks class action certification for this matter, a determination not made by the court because of the timing and manner in which the litigation was terminated.

[4] Section 4240 (e) of New York Insurance Law provides: "No authorized insurer shall make any such agreement in this state providing for the allocation of amounts to a separate account until such insurer has filed with the superintendent a statement as to its methods of operation of such separate account and the superintendent has approved such statement. Subject to the approval of the superintendent, any such statement may apply to one or more groups of separate accounts classified by investment policy, number or kinds of separate account participants, methods of distribution of such agreements or otherwise. In determining whether or not to approve any such statement, the superintendent shall consider, among other things, the history, reputation and financial stability of the insurer and the character, experience, responsibility, competence and general fitness of the officers and directors of the insurer. If the insurer files an amendment of any such statement with the superintendent that does not change the investment policy of a separate account and the superintendent does not approve or disapprove such amendment within a period of thirty days after such filing, such amendment shall be deemed to be approved as of the end of such thirty day period, except that if the superintendent requests further information on the statement during such period from the insurer, such period shall be

extended until thirty days after the day on which the superintendent receives such information. An amendment of any such statement that changes the investment policy of a separate account shall be treated as an original filing." N.Y. Ins. Law § 4240 (e) (McKinney 2007).

[5] The consent order was attached to the plaintiff's original complaint.

[6] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint, or any count in a complaint, counterclaim or cross complaint has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. . . . Nothing in this section shall dispense with the requirements of Sections 61-3 or 61-4 of the appellate rules."

[7] Practice Book § 10-20 provides: "The first pleading on the part of the plaintiff shall be known as the complaint. It shall contain a concise statement of the facts constituting the cause of action and, on a separate page of the complaint, a demand for relief which shall be a statement of the remedy or remedies sought. When money damages are sought in the demand for relief, the demand for relief shall include the information required by General Statutes § 52-91."

[8] Practice Book § 10-1 provides in relevant part: "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . ."